UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA BASSO,
AMY HARTMAN, and
JAIME VILLA RUIZ,

                 Plaintiffs

        v.

NEW YORK UNIVERSITY,

               Defendant.

CIVIL ACTION NO. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

*"In the fall of 2007, NYU Tisch School of the Arts Asia opened a campus in Singapore that offers the same professional training as in New York City."* – New York University Bulletins, 2009 – 2013.

       This is a class action, brought by Plaintiffs Anna Basso, Amy Hartman, and Jaime Villa Ruiz (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated individuals against New York University ("NYU" or "Defendant").

## NATURE OF THE ACTION

       1.     From 2007, when NYU opened Tisch School of the Arts in Singapore ("Tisch Asia"), and until 2012, when it announced its decision to close the program, NYU marketed Tisch Asia as a program offering identical graduate degree and professional training as its renowned Tisch School of the Arts located in New York City ("Tisch New York").

       2.     Plaintiffs and other similarly situated students enrolled in Tisch Asia expecting to receive the same quality of education and opportunities as students at Tisch New York, and paid

1

the same amount of tuition.

3.     However, except for the cost of tuition, Tisch Asia never lived up to the level of Tisch New York.

4.     Tisch Asia students were not provided with the same quality of instruction and equipment as their New York counterparts; did not have an opportunity to gain the same or even comparable internships, part-time jobs in the industry or other resume building opportunities;[1] enter into certain important artistic contests and festivals or apply for certain grants available to New York students. Tisch Asia students did not and could not avail themselves of the networking opportunities crucial to the art world, which Tisch New York students had access to through New York faculty connections and significantly wider Tisch New York's exposure to Hollywood and important figures in the film industry. In addition, Tisch Asia students were not rendered the same career development services, alumni network, or access to Tisch New York or NYU's facilities. Finally, despite NYU's assurances that Tisch Asia would be in operation for a long period of time and create a legacy, the school was closed after fewer than eight years of existence.

5.     When NYU decided to close Tisch Asia in 2012, it became abundantly clear to Tisch Asia students that they fell victim to an educational scam, that their program would never create a legacy, and the hundreds of thousands of dollars they paid for education of far lower quality than provided by Tisch New York were not even remotely worth it.

6.     Tisch Asia students brought their concerns and complaints to NYU administration and NYU Board of Trustees,[2] but NYU neither remedied the situation nor made Tisch Asia

---

[1]  In fact, there was no career development office in Singapore whatsoever.

[2]  *See, e.g.*, article "Anatomy Of A Failed Campus: What Happened At Tisch Asia?" by

students whole.

7.      Many of the NYU faculty members shared Tisch Asia students' concerns and outrage. In a March 28, 2013 letter to NYU Board of Trustees, signed by thirty one NYU faculty members, the faculty state: *"We are troubled by the likelihood that NYU's students are charged full tuition for programs hastily and inexpertly created... Such practices are unfair, and even dangerous, to our students…"*

## JURISDICTION

8.      The jurisdiction of this Court is invoked pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §1332(d). The Class Action Fairness Act provides jurisdiction over this action because more than 1 member of the class is a citizen of another state, the Defendant is a citizen of New York and the damages suffered by members of the class exceed $5 million.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is located and/or has offices in this jurisdiction and a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction.

## PARTIES

10.      **Plaintiff Anna Basso** received her MFA degree in Dramatic Writing from Tisch Asia in 2014. Ms. Basso paid approximately $100,000 in tuition for attending Tisch Asia. Ms. Basso is a resident of the State of Georgia.

11.      **Plaintiff Amy Hartman** was enrolled and attended Tisch Asia's Film program from 2010 through 2012. Ms. Hartman paid approximately $165,000 in tuition for attending Tisch

---

Zoë Schlanger, which includes Tisch Asia students' letter to NYU Board of Trustees, available at http://nyulocal.com/on-campus/2013/03/05/anatomy-of-a-failed-campus-what-happened-at-tisch-asia/ (last accessed on September 19, 2016, at 11:53 a.m. EST).

Asia. Ms. Hartman is a resident of California.

12.      **Plaintiff Jaime Villa Ruiz** received his MFA degree in Film from Tisch Asia in 2014. Mr. Villa Ruiz paid approximately $165,000 in tuition for attending Tisch Asia. Mr. Villa Ruiz is a resident of California.

13.      **Defendant NYU** is an accredited private non-profit higher education institution based in New York City. NYU Tisch School of the Arts, founded in 1965, is a center of study in the performing and media arts, located at 721 Broadway, New York, NY 10003 ("Tisch New York"). Tisch Asia, opened in 2007, was NYU's graduate program based in Singapore, which offered four MFA degrees and was advertised by NYU as identical to Tisch New York. Defendant shut down Tisch Asia in 2015.

## STATEMENT OF THE FACTS

14.      In 2007, NYU opened Tisch School of the Arts Asia, located in Singapore. The school featured four programs: Animation & Digital Arts (2008-2014), Dramatic Writing (2008-2014), International Media Producing (2011-2013), and Film (2007-2015).

15.      The cost of tuition at Tisch Asia was identical or nearly identical to that of Tisch New York.

16.      In the fall of 2012, NYU announced that it would close Tisch Asia. Tisch Asia's Singapore campus was shut down in 2015.

17.      The majority of Tisch Asia students were applicants to Tisch New York MFA programs, whose applications to Tisch New York were rejected. Instead, they were offered to apply to Tisch Asia with a promise that it "offers the same degree as in New York."

18.      Defendant promoted Tisch Asia to the Plaintiffs and other class members in its

4

educational brochures as offering "the same professional training as in New York City." NYU

staff and faculty, including the founder and former President of Tisch Asia Pari Shirazi, the former

Chair of Tisch Asia's Graduate Film Program John Tintori, the former Chair of Tisch Asia's

Dramatic Writing program Richard Wesley, and others, repeatedly emphasized the equivalence of

the two programs to the students.

19.     In its 2011 letter to incoming Tisch Asia graduate film students, the former Chair of

Tisch Asia's Graduate Film Program Michael Burke tells students:

> "Tisch Graduate Film has trained some of the finest writers, directors,
> cinematographers, producers, and editors in the film industry. We will maintain
> this tradition in Singapore by ensuring that the faculty, equipment, and facilities are
> of the same quality that have been established at the New York campus..."

20.     Tisch Asia students relied on these and similar NYU's representations that, in sum

and substance, Tisch Asia and Tisch New York were identical programs, when making the

decision to enroll at Tisch Asia.

21.     In reality, however, Tisch Asia was a subpar program in practically every aspect,

from the quality of faculty, facilities and equipment to exclusion of Tisch Asia students from

grants, competitions, and networking opportunities available to students at Tisch New York.

**Quality of Faculty And Instruction**

22.     In addition to promising identity between Tisch Asia and Tisch New York, the

student brochures and handbooks also specifically represented to the Plaintiffs and other similarly

situated class members that "[Tisch Asia] faculty are working professionals in the industry," and

"each member of the faculty has been meticulously selected to teach at [Tisch Asia] because of

their strong ties to the industry."

23.     In reality, many faculty members at Tisch Asia had either subpar experience and/or knowledge to the faculty in New York, did not have strong ties to the industry and/or had not been active in the industry for a long period of time. At least one teacher was a fresh graduate of Tisch Asia.

24.     For example, Plaintiff Villa Ruiz' first and second year Cinematography professors showed students outdated lighting techniques resembling television lighting of 1990's, which is not useful in the modern day. One of Plaintiff Villa Ruiz' Cinematography professors did not know how to use a modern camera.

25.     At one point, Tisch Asia's Dramatic Writing class faced a serious faculty crisis. In their August 12, 2013 letter to Dramatic Writing students, the former Associate Chair William Kovacsik and Interim Dean of Tisch Asia Michael Burke, informed students that the school was not able to find a One Hour Drama faculty member with extensive experience in American Television industry, and instead offered lessons by a New York-based professor via Skype. These lessons were very difficult to schedule because of the 12-hour time difference between New York and Singapore and, in any event, did not provide an extremely important live instruction experience.

26.     In the same August 12, 2013 letter, the Dramatic Writing students were promised that Glen Mazzara and Bridget Bedart, American Television industry professionals, would provide feedback on the students' One Hour Thesis scripts. This promise was not fulfilled. The letter also listed other industry professionals, such as two-time Emmy winner Billy Finkelstein, who had been "invited" to conduct workshops at Tisch Asia, but, as it later turned out, never accepted the invitation.

6

27.     In 2011, the Dramatic Writing students were promised a class taught by a famous Singaporean playwright Haresh Sharma. However, to the students' great disappointment, Mr. Sharma was not offered the opportunity at Tisch Asia because of a financial cut. The class instead was taught by a previous year Tisch Asia graduate.

28.     Another significant misrepresentation by Defendant was marketing Oliver Stone, a world-famous director and three-time Academy Award winner, as Tisch Asia's Artistic Director. Even though Defendant aggressively promoted Oliver Stone to its students, including listing him as an Artistic Director of Tisch Asia on its website and in its 2009-2011 and 2011-2013 bulletins, and placing advertisements in other publications, including "Complete Guide To Making Movies 2012" published on the website moviemaker.com, where Defendant represents that "Oliver Stone serves as Tisch Asia's artistic director and regularly delivers lectures and workshops on campus" – Mr. Stone had not paid a visit to Tisch Asia since at least 2011, had not given a workshop there since at least 2010, and left that post altogether in or prior to September 2012.

29.     Defendant would frequently hire local Singaporean adjunct professors, whose professorship was far below Tisch New York standards.

**Access to Contests, Grants, and Networking Opportunities**

30.     Students at Tisch Asia were often not eligible to apply for certain contests and grants, not informed about such opportunities, given too short of a notice to prepare meaningful material on time, or simply not qualified to apply due to the lack of certain resources (e.g., required collaboration with students at other programs not offered at Tisch Asia, such as Music).

31.     For example, until July 2016, Tisch Asia Students were not allowed to participate in NYU's "Purple List" – a contest where NYU faculty choose top feature screenplays by Tisch

students or recent alumni and present the screenplays to industry leaders in New York and Los

Angeles for potential production.

32.     The difference in opportunities and perception between New York and Tisch Asia

students are evident in a July 27, 2016 email by Barbara Schock, the Chair of Tisch New York

Graduate Film Program, addressed to Tisch Asia students. Ms. Schock writes:

> "Change and discord usually come bearing gifts, and your concerns over not being
> included in the [Purple List] led to my reflecting on the department's relationship to Tisch
> Asia students. One student noted that you are no longer a different department, which is
> true. You are all part of the Grad Film Department in NY – two student bodies in one
> department – and it is my goal to blend our community even more. So, to that end, I am
> announcing that after one final year, beginning in the fall of 2017, the First Run Festival[3]
> and Vague Awards contests will no longer have a separate Tisch Asia application process;
> the contests will be joined."[4]

33.     Tisch Asia students were also ineligible for certain grants and fellowships available

to their New York counterparts. For example:

- Tisch New York students were allowed to apply for and obtain double the

  production allotment funds from NYU for thesis work, while Tisch Asia students

  were not allowed to apply for such extra funding;

- Tisch Asia students were not eligible to receive a Graduate Student Organization

  grant, offering $300 individual supply grants to Tisch graduate students.

- Tisch Asia students were not eligible for the WTC Johnson Fellowship, Dean's

---

[3] Tisch Asia students have been fighting to have equal opportunities at the First Run Festival since
at least 2010. When one student complained about inadequate representation of Tisch Asia films at
the festival, including the fact that only three films by Tisch Asia students competed for one prize
and only in its own "Tisch Asia" category, Pari Shirazi, the Dean of Tisch Asia at the time, emailed
the students stating, inter alia, "Maybe we need to think and do something other than First Run
Festival for our films."

[4] In addition, Tisch Asia students' films were initially not screened as part of the "East Meets
West" showcase in Los Angeles, which served to introduce Tisch students to the LA Film
community.

Fellowship, Tisch School of the Arts Fellowship, Steven J. Ross Fellowship, Ang

Lee Fellowship, Department Fellowship, and others.

**Subpar Equipment and Facilities**

34.      The equipment at Tisch Asia was also inferior to the equipment available to the

students in New York. For example, at least during the years of 2007 through 2010, Film students

at Tisch Asia had to shoot films using "Handycams" – a brand of a small palm size camcorder,

while graduate Tisch New York students were using Arriflex 16 millimeters professional film

cameras.

35.      Singapore's campus was still under construction and in poor condition when the

first class of students arrived. This is in a direct contradiction to a representation in Defendant's

bulletin stating that the Singapore campus "was completely renovated in 2007."

36.      In fact, there was a myriad of issues with the campus, such as frequent disruptions

of water supply to the building, problems with air conditioning, which would be out of order for

weeks in a row in certain parts of the building or entire floors, and lack of proper furnishing.

## CLASS ACTION ALLEGATIONS

37.      Plaintiffs bring this lawsuit as a class action against Defendant pursuant to

Fed.R.Civ.P. 23(b)(3) on their own behalf and on behalf of a class consisting of all students

enrolled in the Tisch Asia program.

38.      Members of the class are so numerous and geographically diverse that joinder of all

members is impracticable. Upon information and belief, there are hundreds of Tisch Asia students

and graduates, whose identities can be ascertained from the records and files of Defendant.

39.      Common questions of law or fact predominate over any questions affecting only

individual members of the class. Common questions include, but are not limited to, the following:

a.     Whether Defendant breached their contract to provide certain educational benefits and services to the Plaintiffs and other similarly situated class members.

b.     Whether Defendant intentionally and/or negligently misrepresented that they would provide certain educational benefits and services to the Plaintiffs and other similarly situated class members which they failed to do.

c.     Whether Defendant failed to disclose material facts regarding the differences between Tisch Asia and Tisch New York programs.

d.     Whether Defendant was unjustly enriched by promising to provide, but failing to deliver certain educational benefits and services to the Plaintiffs and other similarly situated class members.

e.     Whether Defendant's use of advertising and other representations it made constituted deceptive, untrue, or misleading advertising.

f.     Whether the Defendant violated New York's Consumer Protection Law, G.B.L. §§ 349 and 350, et seq. through its course of deceptive conduct.

g.     Whether the class has been damaged and, if so, the extent of such damages.

40.    These common questions of law and fact predominate over questions, if any, that affect only individual members of the class.

41.    Plaintiffs' claims are typical of and not antagonistic to the claims of the other class members because Plaintiffs, by advancing their claims, will also advance the claims of all

members of the class and because Defendant engaged in conduct that caused members of the class to suffer similar injuries.

42.     Plaintiffs and their counsel will fairly and adequately assert and protect the interests of the absent class members. There are no material conflicts between Plaintiffs' claims and those of the absent class members that would make class certification inappropriate. Counsel for the Plaintiffs are experienced class action attorneys and will vigorously assert Plaintiffs' claims and the claims of the absent class members.

43.     A class action is superior to other methods for the fair and efficient resolution of this controversy. The class action device presents fewer management difficulties and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court.

44.     The prosecution of separate actions by individual members of the class would create a risk of:

    a.     Inconsistent or varying adjudications with respect to individual members of the class; and

    b.     Adjudication with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

45.     Individual litigation of all claims which might be assessed by all class members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain unduly congested. Class treatment, by contrast, provides manageable judicial

treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Defendant.

46.     The certification of a class would allow litigation of claims that, in view of the expense of the litigation, may result in an insufficient amount to support separate actions.

47.     Defendant has acted and/or refused to act in ways generally applicable to the class, thereby making final equitable relief appropriate with respect to the class.

## COUNT I:
## BREACH OF CONTRACT

48.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

49.     Plaintiffs and other similarly situated class members entered into a contract with Defendant New York University to receive educational services, as represented by Defendant in its bulletins, catalogues, and other written materials, in exchange for tuition.

50.     Under the terms of the contract, Plaintiffs and other similarly situated class members agreed to pay Defendant tuition and other educationally related expenses and Defendant New York University promised to provide them an MFA degree and professional training identical to the degree and training awarded to Tisch New York students with attributes and benefits as described in the educational brochures and other materials disseminated by Defendant.

51.     Plaintiffs and other similarly situated class members paid Defendant over forty thousand dollars per year to attend Tisch Asia. In consideration for Plaintiffs and other similarly situated class members' tuition payments and other related expenses, Defendant promised to provide Tisch Asia students with the same degree and training as Tisch New York students.

52.     Defendant failed to provide such services and benefits as promised and for which

12

Plaintiffs and other similarly situated class members contracted.

53.     As a result, Defendant breached their contract with the Plaintiffs and other similarly situated class members, and Plaintiffs and other similarly situated class members suffered legal damages.

54.     As a result, Plaintiffs and other similarly situated class members were deprived of the educational services and benefits which were promised to them and for which they had a reasonable expectation to receive.

**COUNT II:**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

55.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

56.     The law implies a covenant of good faith and fair dealing in every contract.

57.     Defendant violated this covenant of good faith and fair dealing in its contract with Plaintiffs and members of the Class by, *inter alia,* failing to provide the same quality of education as Tisch New York.

58.     Plaintiffs and the Class have been damaged by Defendant's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

**COUNT III:**
**VIOLATIONS OF G.B.L. § 349 ET SEQ.**

59.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

60.     This Count is brought pursuant to New York's Unfair Trade Practices and Consumer Protection Law.

61.    At all relevant times, Defendant's conduct in marketing, advertising and promotion of Tisch Asia program were consumer oriented practices within the meaning of G.B.L. § 349.

62.    G.B.L. § 349 provides that it is unlawful to employ a deceptive act or practice in the conduct of any business, trade or commerce in this state.

63.    Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations and/or knowing concealment, suppression, or omission of material fact. Defendant intended that others rely on such concealment, suppression, or omission in the connection with the advertising, marketing and promotion of Tisch Asia program.

64.    Defendant's practices violated G.B.L. § 349 in one or more of the following ways:

    a.    Defendant misrepresented to Plaintiffs and other similarly situated class members that Tisch Asia and Tisch New York were identical programs.

    b.    Defendant misrepresented to Plaintiffs and other similarly situated class members that Tisch Asia would be a long term program.

    c.    Defendant misrepresented to Plaintiffs and other similarly situated class members that Tisch Asia students would receive the same professional training as Tisch students in New York City.

    d.    Defendant misrepresented to Plaintiffs and other similarly situated class members that NYU would insure that the faculty, equipment, and facilities are of the same quality that have been established at the New York campus.

    e.    Defendant's misrepresentations and omissions of fact constitute violations of G.B.L. § 349.

14

65.     Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer, such as Plaintiffs and other similarly situated class members, acting reasonably under the circumstances into falsely believing that (a) Tisch Asia and Tisch New York were identical programs providing the same professional training and opportunities; (b) Tisch Asia would be a long lasting program; (c) Tisch Asia's faculty, equipment, and facilities were of the same quality that have been established at the New York campus.

66.     Defendant engaged in the deceptive acts and practices in order to sell to Plaintiffs and other similarly situated class members its products and services.

67.     Defendant's misconduct was willful, intentional, or reckless.

68.     Defendant's unlawful conduct arose, was directed and emanated from New York to the great detriment and injury of the Plaintiffs and similarly situated class members.

69.     As a direct and proximate result of Defendant's actions, plaintiff and the class suffered injuries.

**COUNT IV:**
**VIOLATIONS OF G.B.L. § 350 ET SEQ.**

70.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

71.     Defendant's misconduct, as set forth above, constitutes false advertising under G.B.L. § 350 et seq.

72.     Defendant's advertising was misleading in several material respects, including but not limited to the fact that Defendant provided, disseminated, marketed and otherwise distributed advertising and other information to Plaintiffs and similarly situated class members that (a) Tisch Asia and Tisch New York were identical programs providing the same professional training and

15

opportunities; (b) Tisch Asia would be a long lasting program; (c) Tisch Asia's faculty, equipment, and facilities were of the same quality that have been established at the New York campus.

73.     Plaintiffs and other similarly situated class members are consumers and Defendant's misconduct affected public interest.

## COUNT V:
## NEGLIGENT MISREPRESENTATION

74.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

75.     Defendant made numerous standardized misrepresentations to Plaintiffs and other similarly situated class members, including misrepresentations that (a) Tisch Asia and Tisch New York were identical programs providing the same professional training and opportunities; (b) Tisch Asia would be a long lasting program; (c) Tisch Asia's faculty, equipment, and facilities were of the same quality that have been established at the New York campus.

76.     Defendants' misrepresentations were supplied for the purpose of affecting Plaintiffs' and Class Members' financial decisions.

77.     Defendants failed to exercise reasonable care and/or diligence in communicating their misrepresentations.

78.     Defendants intended that Plaintiffs and other similarly situated class members would rely on its misrepresentations.

79.     Defendant made these misrepresentations with knowledge and belief that the representations were false and for the purpose of exploiting Plaintiffs and other similarly situated class members.

80.     Plaintiffs and other similarly situated class members reasonably and justifiability

16

relied to their detriment upon the representations made by Defendant.

81.     As the result of Defendant's acts, Plaintiffs have incurred damages in an amount to be proven at trial.

82.     Defendants directly benefited from, and were unjustly enriched by, their misrepresentations.

## COUNT VI: FRAUD

83.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

84.     Defendant intentionally made false representations to Plaintiffs and other similarly situated class members, including false representations that (a) Tisch Asia and Tisch New York were identical programs providing the same professional training and opportunities; (b) Tisch Asia would be a long lasting program; (c) Tisch Asia's faculty, equipment, and facilities were of the same quality that have been established at the New York campus.

85.     Defendant made these false representations with knowledge and belief that the representations were false and for the purpose of exploiting Plaintiffs and other similarly situated class members.

86.     Defendant intended to induce Plaintiffs to enter into a contract and pay money for the purpose of exploitation for its own financial benefit.

87.     Plaintiffs and other similarly situated class members reasonably and justifiability relied upon the representations made by Defendant.

88.     As the result of Defendant's acts, Plaintiffs have incurred damages in an amount to be proven at trial.

17

**COUNT VII:**
**UNJUST ENRICHMENT**

89.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

90.     Benefits were conferred upon Defendant by the Plaintiffs and other similarly situated class members in the form of tuition and other educationally related payments of school expenses.

91.     Defendant appreciated those benefits.

92.     Retention of those benefits would be inequitable based upon, *inter alia*, Defendant's misconduct in misrepresenting material facts to the Plaintiffs and members of the class, such as that (a) Tisch Asia and Tisch New York were identical programs providing the same professional training and opportunities; (b) Tisch Asia would be a long lasting program; (c) Tisch Asia's faculty, equipment, and facilities were of the same quality that have been established at the New York campus.

93.     Accordingly, Defendant will remain unjustly enriched unless it is ordered to disgorge those wrongfully retained profits.

**PRAYER FOR RELIEF**

94.     Plaintiffs respectfully request that (a) this matter be certified as a class action using the definition of "class" as set forth above, that Plaintiffs be appointed class representatives, and that Plaintiffs' attorneys be appointed class counsel; (b) that judgment be entered against Defendant in an amount to be proven at trial for violations of New York statutory and common law, including actual damages, expected damages, exemplary damages, treble damages, costs of suit, and attorneys' fees; (c) for such other damages, equitable relief, or other relief that the court

18

may deem appropriate, including pre and post-judgment interest.

## **DEMAND FOR JURY TRIAL**

95.     Plaintiffs hereby demand a trial by jury as to all issues.

Dated:      New York, New York
            September 19, 2016

                        GISKAN SOLOTAROFF & ANDERSON LLP

                        By:     _____/s/_____
                                Oren Giskan
                                Aliaksandra Ramanenka
                                11 Broadway, Suite 2150
                                New York, New York 10004
                                (212) 847 -8315
                                *Attorneys for Plaintiffs*

19