UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANNA BASSO, AMY HARTMAN, AND
JAIME VILLA RUIZ,

                Plaintiffs,

         v.

NEW YORK UNIVERSITY,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

16-CV-7295 (VM) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*Attorney-Client Privilege Challenge*

Before the Court is the plaintiffs' letter, dated June 22, 2018, challenging the defendant's assertion of the attorney-client privilege with respect to "three documents withheld from production" by the defendant. See Docket Entry No. 84. The plaintiffs contend that, upon review or the defendant's privilege log, they believe "that the documents, or portions thereof, are not privileged."

The defendant submitted an ex parte letter accompanied by Exhibits A, B and C, dated July 3, 2018, for the Court's in camera review of the disputed documents, which contain e-mail messages: (1) an e-mail message from Mary Schmidt Campbell, "Dean of Tisch School of the Arts," to "lgm2@nyu.edu," dated "3/13/2012," copied to the defendant's high level administrators and Terrance J. Nolan, the defendant's "Deputy General Counsel," with "Email Subject: Re: TischAsia Timeline" (Exhibit A); (2) an e-mail message from John H. Beckman, "Vice President," to Mary Schmidt Campbell and Joseph P. Juliano, "Vice Provost," dated "2/7/2013," copied to Linda Mills, "Vice Chancellor," Terrance J. Nolan, "Shonna R. Keogan,"

1

"Director" and "'Tan, Delicia' <Delicia.Tan@edelman.com>," "a public relations consultant," with "Email Subject: Re: proposed quote in response to Tisch Asia letter to trustees" (Exhibit B); and (3) an e-mail message from Jim Y. Kim, "Chief Financial Officer, Tisch Asia," to Ken Tabachnick, dated "1/28/2014," copied to Kerri J. Tricarico, "Vice President, University Controller," with "Subject: Re: Tisch Asia LOR" (Exhibit C). The defendant's privilege log describes the: (i) March 13, 2012 e-mail message, Exhibit A, as an "[e]mail discussion with counsel regarding Tisch Asia presentation to trustees"; (ii) February 7, 2013 e-mail message, Exhibit B, as an "[e]mail discussion with counsel requesting advice regarding closure and addressing student concerns"; and (iii) January 28, 2014 e-mail message, Exhibit C, as an "[e]mail forwarding notes from counsel with comments and input on draft letter" with "[a]ttachment to email from counsel providing comments and input on draft letter". The defendant asserts that the attorney-client privilege protects these e-mail messages from disclosure because: (a) in the e-mail message dated March 13, 2012, Exhibit A, the defendant's "high level administrators sought advice from the Deputy General Counsel"; (b) in the e-mail message dated February 7, 2013, Exhibit B, the defendant's "Office of Public Affairs sought advice from the Deputy General Counsel and high level administrators"; and (c) in the e-mail message dated January 28, 2014, Exhibit C, the defendant's "high level administrators sought advice from AGC [Associate General Counsel Daniel] Magida . . . and Magida provided comments on same, which were further discussed between the high level administrators." With respect to Exhibit C, the defendant asserts that "[p]arties to the email" include "Kin King and Ethan Koh" who "worked for PricewaterhouseCoopers LLP, which served as the firm responsible for Tisch Asia's annual corporate financial audit." The defendant did not provide the

Court the "[a]ttachment to email from counsel providing comments and input on draft letter," indicated in the privilege log as being relevant to the "1/28/2012" e-mail message, Exhibit C.

***Legal Standard***

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. For Justice v. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (quoting United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011)).

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney: "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."
>
> Upjohn Co. v. United States, 449 U.S. 383, 395-96, 101 S. Ct. 677, 685-86 (1981) (citation omitted).
>
> Under certain circumstances, however, the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client. . . . "Hence the presence of an accountant . . . while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege . . . ." "What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*. If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." . . . The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements.
>
> United States v. Adlman, 68 F.3d 1495, 1499-1500 (2d Cir. 1995).

"[I]n the context of communications to and from corporate in-house lawyers who also serve as business executives," the issue of attorney-client privilege "usually arises" requiring the court to determine "whether the communication was generated for the purpose of obtaining or providing

3

legal advice as opposed to business advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. It requires a lawyer to rely on legal education and experience to inform judgment." Id. (internal citation omitted). A determination respecting whether material at issue is privileged is a matter within the court's discretion. See Adlman, 68 F.3d at 1499.

"A party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential. Moreover, the purpose of the communications must be solely for the obtaining or providing of legal advice." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015). "[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice." In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d Cir. 1984).

*Application of Legal Standard*

In its July 3, 2018 ex parte letter, the defendant failed to make citation to any evidence or legal authority in support of its assertion of the attorney-client privilege respecting the e-mail messages contained in Exhibits A, B and C. The defendant's privilege log neither identifies the positions of the individuals listed there as senders and recipients of the e-mail messages at issue nor where those persons are employed, although the defendants indicate the positions of the listed individuals in their July 3, 2018 ex parte letter, without any supporting evidence. For the purpose of assessing the attorney-client privilege, the Court will assume that the individuals, named in the defendant's letter as "Parties to email" messages contained in Exhibits A, B and C, held, at the relevant times, the positions asserted by the defendant in its July 3, 2018 ex parte letter.

4

The defendant's privilege log is deficient and misleading. Each challenged e-mail message in the defendant's privilege log is described as a single e-mail message. However, each entry from the defendant's privilege log that is at issue contains an e-mail message string consisting of e-mail messages that have been sent to or received by different individuals on multiple dates or multiple times on the same date. For example, Exhibit A contains an e-mail message dated "Tue, 13 Mar 2012 10:29:49 -0400" from Mary Schmidt Campbell to "lgm2@nyu.edu," but also a string of e-mail messages associated with it: (a) an e-mail message indicating "On Mar 13, 2012 at 7:12 AM, 'lgm2@nyu.edu' 'lgm2@nyu.edu wrote:'"; (b) an e-mail message from Mary Schmidt Campbell to Joe Juliano, dated "Mon, 12 Mar 2012 20:53:46 0-400," copied to various individuals; (c) an e-mail message indicating "On Mar 11, 2012, at 11:39PM, Joe Juliano jpj1@nyu.edu wrote:"; (d) an e-mail message indicating "On 3/11/12 12:22 PM, Mary Schmidt Campbell wrote:"; and (e) an e-mail message indicating "On Sun, Mar 11, 2012 at 8:31 AM, Joe Juliano jpj1@nyu.edu wrote:." Exhibit B contains an e-mail message dated "Thu, 7 Feb 2013 18:30:10 -0500" from John H. Beckman to Mary Schmidt Campbell and Joseph P Juliano, copied to various individuals, as well as a string of e-mail messages, including an e-mail message: (i) from Mary Schmidt Campbell to Joe Juliano, dated "February 07, 2013 6:24 PM"; (ii) indicating "On Feb 7, 2013, at 3:24 PM, Joe Juliano jpj1@nyu.edu wrote:"; (iii) indicating "On 2/7/13 2:34 PM Linda G Mills wrote:" (iv) from Joseph P. Juliano to John Beckman, dated "February 07, 2013 1:16 PM"; and (v) indicating "On Feb 7, 2013, at 12:52 PM, John H, Beckman <john.beckman@nyu.edu> wrote:." Similarly, Exhibit C also contains a string of e-mail messages, none of which is identified in the defendant's privilege log.

5

Exhibit A

Neither the defendant's privilege log, nor its July 3, 2018 ex parte letter to the Court identifies the recipient of the March 13, 2012 e-mail message whose e-mail address appears to be "lgm2@nyu.edu." None of the e-mail messages in the string e-mail messages contained in Exhibit A contains a communication seeking or giving legal advice. Copying counsel on an e-mail message directed to an unidentified person does not establish that the: (1) communications contained in Exhibit A's e-mail messages are between the defendant and its counsel; (2) communications are intended to be, and in fact were, kept confidential; and (3) communications were made for the purpose of obtaining or providing legal assistance. See Brennan Ctr. For Justice, 697 F.3d at 207. As the defendant acknowledges in its July 3, 2018 ex parte letter, Exhibit A contains "internal communications among the highest level of administrators." None of the communications is sent to or by the defendant's counsel; rather, counsel is only listed with the designation "Cc," signaling a copy recipient. Internal business communications by the defendant's high level administrators are not protected by the attorney-client privilege just because copies are sent to the defendant's counsel. The defendant failed to establish that the attorney-client privilege applies to the e-mail messages contained in the defendant's Exhibit A; thus, they must be disclosed to the plaintiffs.

Exhibit B

Like the e-mail messages contained in Exhibit A, none of the e-mail messages contained in Exhibit B is sent to or by the defendant's counsel. Contrary to the defendant's description in the privilege log, stating that Exhibit B contains "[e]mail discussion with counsel requesting advice regarding closure and addressing student concerns," none of the e-mail messages in Exhibit B contains a request to counsel for legal advice or provides legal advice from counsel.

6

The e-mail messages contained in Exhibit B are business communications among the defendant's high level administrators, copied to various individuals, including a person appearing to be a person not in the defendant's employ, Delicia Tan, "a public relations consultant." The defendant failed to establish that the attorney-client privilege applies to the e-mail messages contained in the defendant's Exhibit B; thus, they must be disclosed to the plaintiffs.

Exhibit C

The defendant acknowledges that Exhibit C contains "comments" by Daniel Magida, defendant's associate general counsel, concerning "a Letter of representation for the Tisch Asia audit" that was prepared by "PricewaterhouseCooper LLP, which served as the firm responsible for Tisch Asia's annual corporate financial audit." Exhibit C contains a string of e-mail messages, including an e-mail message, dated "Mon, Jan 20, 2014 at 9:30 AM," from "Ken Tabachnick" stating: Hi Danny, Attached is the final draft (as I understand it) LOR for the Tisch Asia audit. Can you take a look and see if we have any comments?" By an e-mail, dated "Tue, 21 Jan 2014 15:32:55 -0500," sent by Daniel Magida to Kenneth E. Tabachnick, counsel stated: "Comments below." In counsel's e-mail message to Kenneth E. Tabachnick, dated "Tue, 21 Jan 2014 15:32:55 -0500," the following text appears:

1. This letter should be signed by Mary and Carolyn or Mary and Jin. Last year it was signed by Mary and Marty on NYU letterhead – I believe PwC accepted last year but we probably should follow their instructions (Tisch Asia letterhead signed by Tisch Asia 2 of CEO/SFO/Directors).
I am not sure if I am authorized to sign, but I would think it can be signed by Dean Campbell and Carolyn. I can print out the final letter on Tisch Asia letterhead once all changes are finalized.
2. Section 5 – Tisch Asia confirms and represents that the Singapore Campus will close no later than 31 August 2015. Is that definite? Do we need to modify to leave open the possibility it will remain open longer?
Not sure how to answer this, but would there be any reason to keep the campus open – not the outside production studios?
3. Section 11 – there is new language re no change to repayment terms of loan. That should be correct as of date signed but wanted to note.
It is consistent with our discussion.

7

4. Section 20- PwC is getting a signed letter from NYU about this. Not sure why this language is needed. Would be helpful to understand.
    I can reach out to PwC to inquire about this.
    5. Section 21 – looks right to be [sic] but would be good to confirm.

The defendant does not explain and it is not clear, whether what follows counsel's words "Comments below" are all counsel's comments given that the first part of the text under the enumerated paragraphs is written in smaller font. Regardless of the font used to express counsel's comments, none of the paragraphs provide legal advice. In his e-mail message, dated "Mon, Jan 20, 2014 at 9:30 AM," Kenneth E. Tabachnick asked counsel to "take a look and see if we have any comments" on "the final draft (as I understand it) LOR for the Tisch Asia audit." Comments are not legal advice, which is clear from counsel's responsive e-mail message, dated "Tue, 21 Jan 2014 15:35:32:55 -0500." Counsel's "Comments below" include phrases reflecting uncertainty and ignorance about business practices and matters: (i) "we should probably follow [PwC's] instructions"; (ii) "I am not sure if I am authorized to sign"; (iii) "Do we need to modify to leave open the possibility it will remain open longer?"; (iv) "Not sure how to answer this, but would there be any reason to keep the campus open – not the outside production studios?"; (v) "Not sure why this language is needed"; and (vi) "I can reach out to PwC to inquire about this." It is apparent from the content of counsel's "Comments below" that the comments are business-related communications, including questions and uncertainties about business practices and matters, not legal advice provided based on counsel's legal education and experience. The defendant failed to establish that the attorney-client privilege applies to the e-mail messages contained in the defendant's Exhibit C; thus, they must be disclosed to the plaintiffs. The defendant also must disclose to the plaintiffs the "[a]ttachment" indicated in the defendant's privilege log for the entry dated "1/28/2014," which is not protected by the attorney-client

8

privilege, since the e-mail messages contained in Exhibit C are not protected by the attorney-client privilege.

*Conclusion*

Upon an in camera review of the documents at issue, the Court finds that the defendant failed to establish that the attorney-client privilege applies to the documents listed in the defendant's privilege log under "Date Sent": (a) "3/13/2012"; (b) "2/7/2013"; and (c) "1/28/2014," including the "[a]ttachment." The defendants shall disclose these documents to the plaintiffs, on or before July 31, 2018.

Dated: New York, New York
       July 27, 2018

SO ORDERED:

/s/ Kevin Nathaniel Fox
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE