```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ANNA BASSO, AMY HARMAN, and         :
JAIME VILLA RUIZ,                   :
on behalf of themselves and other   :
similarly situated individuals,     :      16 Civ. 7295 (VM)
                                    :
                      Plaintiffs,   :
                                    :      DECISION AND ORDER
                                    :
       - against -                  :
                                    :
NEW YORK UNIVERSITY,                :
                                    :
                      Defendant.    :
-----------------------------------X
```



**VICTOR MARRERO, United States District Judge.**

Plaintiffs Anna Basso, Amy Hartman ("Hartman"), and Jaime Villa Ruiz (collectively, "Plaintiffs") seek to certify, pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)"), a class consisting of the students who attended Defendant New York University's ("NYU") now-defunct, Singapore-based Tisch School of the Arts, Asia ("Tisch Asia"). (See "Motion for Class Certification," Dkt. No. 91.) NYU opposes class certification, largely on the grounds that each class member's case would require individualized proof. (See "Opposition," Dkt. No. 97.) For the reasons discussed below, Plaintiffs' Motion for Class Certification is GRANTED.

## I. BACKGROUND

This Order assumes familiarity with the Court's ruling partly granting NYU's motion to dismiss. See Basso v. New

York Univ., 16 Civ. 7295, 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017). Briefly, Plaintiffs allege that NYU induced students to enroll at Tisch Asia -- a performing-arts-focused graduate school which opened in 2007 and closed in 2015 -- by representing that Tisch Asia would offer an educational experience equal to NYU's renowned Tisch School of the Arts in New York City ("Tisch New York"). (See "First Amended Complaint," Dkt. No. 22 ¶¶ 2-3.) Plaintiffs allege that "except for the cost of tuition, Tisch Asia never lived up to the standards of Tisch New York," and "Tisch Asia students were not provided with the same education, professional training, and equipment as their New York counterparts." (Id. ¶¶ 4-5.)

Plaintiffs' First Amended Complaint asserted seven causes of action on behalf of the putative class: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the New York General Business Law ("G.B.L.") Section 349; (4) violation of G.B.L. Section 350; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment. By Order dated February 24, 2017, the Court dismissed counts (2), (3), and (4). See Basso, 2017 WL 1019505, at *7.

2

Discovery closed in June 2018. Plaintiffs thereafter moved to (1) certify a proposed class, pursuant to Rule 23(b)(3), consisting of "all students who attended New York University Tisch School of the Arts, Asia" (the "Proposed Class"); and (2) appoint Giskan, Solotaroff & Anderson LLP and Schwartz, Ponterio & Levenson, PLLC as class counsel. (See Motion for Class Certification at 1.)

Plaintiffs argue that the Proposed Class meets the class certification requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)"). First, Plaintiffs assert that the Proposed Class is ascertainable, because the Court can "easily and objectively determine[] based on NYU enrollment records" whether a particular person attended Tisch Asia. (See "Class Cert. Mem.," Dkt. No. 92 at 21.) Second, Plaintiffs contend that, because the Proposed Class consists of over three hundred individuals, it is sufficiently numerous to make joinder impracticable.

Third, Plaintiffs maintain that the Proposed Class members' claims share common questions of law and fact, including: (1) whether NYU failed to disclose material facts regarding the differences between Tisch Asia and Tisch New York; (2) whether NYU breached its contract to provide certain

3

educational benefits and services it had promised would be provided to the Proposed Class members; (3) whether NYU intentionally and/or negligently misrepresented that it would provide certain educational benefits and services, and then failed to provide them; (4) whether NYU concealed that Tisch Asia was a five-year experiment; and (5) whether NYU was unjustly enriched by promising to provide but failing to deliver to the Proposed Class members certain educational benefits and services.

Fourth, Plaintiffs argue that their claims typify those of the Proposed Class, because all class members entered into the same contract with NYU and "were subject to the same misrepresentations and omissions." (Id. at 25.) Fifth, Plaintiffs claim that they are adequate representatives of the Proposed Class, because their "interests are aligned with other class members," they "do not have any interests antagonistic to those of the other class members," and they "are committed to the vigorous prosecution" of this suit. (Id. at 25-26.) In addition, Plaintiffs argue that their lawyers are "highly experienced in handling class actions" and have "pursued this matter vigorously and competently." (Id. at 26.)

Next, Plaintiffs contend that the case meets the class certification requirements of Rule 23(b)(3). First, Plaintiffs argue that common questions of law and fact –– especially "whether Tisch Asia was the same program as Tisch NY," which Plaintiffs view as the "predominant common question in this case" –– predominate over any questions that affect only particular class members. (Id. at 27-28.) Second, Plaintiffs contend that a class action is superior to other available methods of adjudicating these claims, because the alternative would be wastefully duplicative separate suits that share "the core issue" of whether NYU misrepresented "that Tisch Asia and Tisch NY were equal programs." (Id. at 29.)

NYU opposed class certification. As to the requirements of Rule 23(a), NYU first argues that Plaintiffs fail to establish numerosity because joinder is, in fact, practicable. NYU maintains that the Proposed Class members are sufficiently sophisticated –– and have large enough claimed damages –– such that it would be more appropriate to join them as individual plaintiffs. Second, NYU argues that the Proposed Class lacks common questions, because the case will require "an individualized analysis of the circumstances

5

surrounding each class member" -- particularly on the question of each class member's reliance. (Opposition at 16.) Third, NYU contends that Plaintiffs' claims are not typical of class members' claims, because each Tisch Asia student "had different reasons for attending" and "allege[s] different grievances about different aspects" of Tisch Asia. (Id. at 19.) Fourth, NYU asserts that Plaintiffs are inadequate class representatives because "their testimony raises credibility issues as to key facts," and "they generally lack knowledge about the issues in the case." (Id. at 20.) In particular, NYU notes that Hartman once described Tisch Asia as "bar none the best decision of my life." (Id. at 21.)

As to the requirements of Rule 23(b)(3), NYU first argues that predominance is not met because the "issues subject to individualized proof far outweigh any issues subject to generalized proof." (Id. at 22.) For instance, NYU maintains that Plaintiffs relied on different representations in deciding to enroll at Tisch Asia. NYU also argues that Plaintiffs allege that "NYU injured them in different ways over different periods of time." (Id. at 26.) Second, NYU asserts that superiority is not met, because "the exceedingly

6

individualized nature of each putative plaintiff's educational experience . . . would be judicially inefficient and would risk jury confusion" if the case were tried as a class action. (Id. at 30.)

In the reply brief Plaintiffs filed in further support of class certification, they abandoned their request to certify a class action as to the breach of contract claim. (See "Reply," Dkt. No. 104 at 1.)

As to the Rule 23(a) factors, Plaintiffs first counter that numerosity is presumed because NYU does not assert that the Proposed Class contains fewer than forty members. Plaintiffs argue that joinder would be impracticable, because the Proposed Class members live around the world and are fairly young professionals with student debt and limited budgets. Second, Plaintiffs contend that commonality is satisfied (1) because all three Plaintiffs relied on NYU's representation that Tisch New York and Tisch Asia "were the same program" and (2) because reliance is presumed, to the extent that the claims are based on omissions. (Id. at 4.) Insofar as reliance requires individualized proof, Plaintiffs submit that, like damages, it "can be dealt with in subsequent proceedings." (Id. at 7.) Third, Plaintiffs argue that their

claims are typical of the Proposed Class members' claims, because the common issues are central in all of their claims. Fourth, Plaintiffs assert that they are adequate class representatives, and the inconsistencies in their testimony identified by NYU are immaterial.

As to the Rule 23(b)(3) factors, Plaintiffs argue that the common question of whether NYU concealed material facts predominates over any individualized questions. While Plaintiffs "acknowledge that this is not the simplest case for certification[,]" they submit that "[t]o the extent it is even a close call, the Court should err towards granting certification." (Id. at 12.)

## II. **LEGAL STANDARD**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). "In order to justify a departure from that rule, 'a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members.'" Id. at 348-49 (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1974)).

8

Therefore, to certify a Rule 23(b)(3) class action, a plaintiff must establish by a preponderance of the evidence each of Rule 23(a)'s four requirements -- numerosity, commonality, typicality, and adequacy of representation -- as well as Rule 23(b)(3)'s two additional requirements: (1) that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In re Petrobras Secs., 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a), (b)(3)). The United States Court of Appeals for the Second Circuit also recognizes "an implied requirement of ascertainability in Rule 23," which requires a class to be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Id. (quoting Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015)).

District judges have "broad discretion" whether to grant class certification, because they are "often in the best position to assess the propriety of the class" and are able "to alter or modify the class, create subclasses, and

9

decertify the class whenever warranted." In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001). Moreover, district judges in the Second Circuit are to construe Rule 23 liberally, resolving close calls in favor of class certification. See Levitt v. J.P. Morgan Secs., Inc., 710 F.3d 454, 464 (2d Cir. 2013).

Here, Plaintiffs seek to certify a class action with respect to their negligent misrepresentation, fraud, and unjust enrichment claims. The elements of negligent misrepresentation under New York law are (1) a duty, arising from a special relationship, to give correct information; (2) a false representation by the defendant that the defendant should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff did reasonably rely on it to his or her detriment. See Basso, 2017 WL 1019505, at *5 (citing Hydro Inv'rs, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000)). The elements of fraud under New York law are (1) a material, false representation (2) made with knowledge of its falsity and (3) intent to defraud, upon which (4) the plaintiff reasonably

10

relies, (5) causing the plaintiff damage. See id. at *6 (citing Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993). The elements of unjust enrichment are (1) the enrichment of the defendant (2) at the plaintiff's expense, (3) under circumstances of such enrichment equity and good conscience require the defendant to make restitution. See id. (citing Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014)).

### III. **ANALYSIS**

#### A. RULE 23(A) REQUIREMENTS

##### 1. Numerosity

Rule 23(a)'s numerosity prong requires the class to be so large that joinder of all members would be impracticable. See Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of forty or more members, see Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), though plaintiffs need not precisely enumerate the class members. See Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

Plaintiffs estimate that the Proposed Class "consists of over 300 Tisch Asia students" who now live around the world. (Class Cert. Mem. at 22.) NYU disputes this figure, arguing

11

that Plaintiffs overlook "a number of factors that will preclude certain T[isch Asia] students from the putative class." (Opposition at 12.) NYU also argues that Plaintiffs have not shown that joinder would be impracticable.

First, the Court finds that the Proposed Class is sufficiently ascertainable, because membership can be established via the "objective criteria" of Tisch Asia enrollment records. See Petrobras, 862 F.3d at 266.

As to numerosity, the Court agrees with Plaintiffs that joinder would raise logistical complexities, given that the Proposed Class -- all alumni of the Singapore branch of an American university -- is spread across the globe. As NYU points out, however, this consideration is somewhat counterbalanced by the fact that Proposed Class members are adults with graduate education and claimed damages in the six figures, and who therefore perhaps have the incentive and means to join this suit as individual plaintiffs. The Court also notes that Plaintiffs' argument that joinder would be impracticable is in tension with their decision not to seek class certification on their breach of contract claim; it is not clear why joinder would be so impracticable for the fraud, negligent representation, and unjust enrichment claims as to

require proceeding as a class action, if it is not equally impracticable for the breach of contract claim.

However, because NYU does not allege that the Proposed Class contains fewer than forty members, the Court gives Plaintiffs the benefit of the Consolidated Rail presumption. The Court declines NYU's invitation to find the Proposed Class insufficiently numerous on the basis of determinations that overlap with merits questions (for instance, on the basis that certain Proposed Class members should be excluded from the class enumeration because they may have no damages). Although NYU argues strongly that the case probably could proceed on a non-class basis with hundreds of individually joined plaintiffs, the Court finds that such a course of action would not be so much more economical from a case management perspective as to rebut the presumption and justify denying class certification on numerosity grounds alone.

The Court therefore finds that numerosity is satisfied.

2. Commonality

Rule 23(a) requires class members' claims to share common questions of fact and law. See Fed. R. Civ. P. 23(a)(2). This standard means plaintiffs must show that the

class's claims involve at least one "common contention . . . [that is] of such a nature that it is capable of class-wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. Here, Plaintiffs identify several purported common questions -- each of which NYU disputes. (Compare Class Cert. Mem. at 23-24, with Opposition at 17.)

Without ruling on whether each of the purported common questions is in fact "common" for the purposes of Rule 23(a), the Court finds that the case involves at least one common question and therefore satisfies the requirement of commonality. For example, the "special relationship" element of Plaintiffs' negligent misrepresentation claim will require a close examination of the Tisch Asia enrollment forms in order to determine how the nature of the relationship between matriculants and the school was memorialized. Whether, in fact, a "special relationship" formed in those documents is an open question of fact yet to be determined in this litigation, but the Court finds that the answer to that question would not necessarily vary from student to student.

14

Similarly, the Court notes that, in denying Plaintiffs' motion to further amend their complaint, Magistrate Judge Kevin Fox (who supervised the parties' pretrial proceedings) held that Plaintiffs have the option of establishing the second element of their negligent misrepresentation claim -- a false representation by NYU that NYU should have known was incorrect -- with proof of NYU's "failure to impart information," as opposed to specific affirmative misrepresentations. (See Dkt. No. 78 at 6.) Because Plaintiffs allege that NYU failed to impart the true state of Tisch Asia -- that is, that the institution was unviable, and the educational experience it provided was not equal to that of Tisch New York -- to the entire Tisch Asia student body with an intent to induce reliance for enrollment purposes, the question posed by that element stands to be answered class-wide with a single yes or no. See Dukes, 564 U.S. at 350 (defining a "common question" as one that yields a "common answer[]" and hence gives "cause to believe that all [the Proposed Class members'] claims can productively be litigated at once" (quoting Richard Nagareda, "Class Certification in the Age of Aggregate Proof," 84 N.Y.U. L. Rev. 97, 132 (2009))).

15

The Court therefore finds that commonality is satisfied.

3. Typicality

Rule 23(a)(3) requires that Plaintiffs' claims be typical of the Proposed Class members' claims. This requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Id. at 936-37.

Plaintiffs argue that they satisfy this requirement because they "were subject to the same misrepresentations and omissions as the other members of the Class." (Class Cert. Mem. at 25.) NYU counters that Plaintiffs' claims cannot be typical, because even the claims of the three named Plaintiffs contrast with one another: "they each had different reasons for attending, took different professors, in different courses, in different years, and pursued different professional interest. They allege different grievances about

16

different aspects of T[isch Asia]." (Opposition at 19.) "It logically follows," NYU argues, "that putative class members also would have relied on varying sources of information and factors in their decision to enroll at T[isch Asia], and would have had unique experiences at the School." (Id.)

The Court finds that Plaintiffs' claims typify those of the Proposed Class to the extent required by Rule 23(a). Plaintiffs are typical of the Proposed Class because their putative injuries arise from the manner in which NYU allegedly misrepresented Tisch Asia -- through statements and omissions -- to the student body as a whole. In this sense, the Proposed Class's alleged "injuries derive from a unitary course of conduct." Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).

The Court therefore finds that typicality is satisfied.

4. Adequacy of Representation

Plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified,

experienced and able to conduct the litigation." <u>Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000). The adequacy inquiry, like other Rule 23(a) requirements, is intended to ensure "the efficiency and fairness of class certification," <u>Giuliani</u>, 126 F.3d at 378, with a particular focus on "uncover[ing] conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997).

Under Rule 23(g), a court's appointment of class counsel must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

a. Class Representatives

NYU argues that Plaintiffs are inadequate class representatives (1) because their claims conflict with the interests of Proposed Class members who do not want the prestige of a Tisch Asia degree diminished by a lawsuit, and (2) because Plaintiffs have credibility issues. Plaintiffs counter that these purported inadequacies are illusory and immaterial. The Court finds that the conflicts identified by NYU are not sufficiently "fundamental" to preclude class certification; there is no indication, for instance, that a recovery by the named Plaintiffs would preclude or impede recovery by other members of the Proposed Class. See In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d Cir. 2009).

With respect to members of the Proposed Class who may worry that the suit will diminish the value of their degrees, the Court notes that Tisch Asia has already closed. If Tisch Asia dissolved because it was improperly managed and based on misrepresentations -- to be sure, a question that remains open and may well be answered in the negative -- it is that harmful activity that tarnishes the brand, not the efforts of the victims to redress their claimed injuries. Moreover,

19

members of a Rule 23(b)(3) class have the ability to opt out and need not associate themselves with the suit.

The Court is also mindful that, given Plaintiffs' decision not to seek certification of their breach of contract claim, class certification would likely foreclose the other Proposed Class members' contract claims due to claim preclusion. See In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 114 (E.D.N.Y. 2012). Such "splitting" of class members' claims by the class representatives can raise an adequacy concern sufficient to defeat class certification, especially where -- unlike Plaintiffs here -- the class representatives seek certification only on minor claims. See id.; see also Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 606-07 (S.D.N.Y. 1982). The Court finds that no such concern is present here. Not only are the fraud and negligent misrepresentation claims significant causes of action, Plaintiffs also seek certification with respect to the unjust enrichment claim -- which they originally pleaded as an alternative to the contract claim. (See First Amended Complaint ¶ 112.)

Finally, the Court notes that Plaintiffs have seen this case through the discovery process, which included full-day

20

depositions for each of them. The Court finds that these efforts evince a willingness on Plaintiffs' part to prosecute the case with the requisite "forth-rightness and vigor." Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 470 (S.D.N.Y. 1968).

Therefore, the Court finds that Plaintiffs are adequate representatives of the Proposed Class.

b. Class Counsel

Plaintiffs' counsel at Giskan Solotaroff & Anderson LLP and Schwartz, Ponterio & Levenson, PLLC submitted law firm resumes attesting to their experience litigating class actions. (See Class Cert. Mem. at Ex. 54). NYU does not dispute that these law firms can fairly and adequately represent the Proposed Class's interests. (See Opposition at 20.) The Court therefore finds that proposed class counsel satisfy Rule 23(a)(4).

B. RULE 23(B)(3) REQUIREMENTS

1. Predominance

Rule 23(b)(3)'s predominance requirement tests whether a putative class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623. This "does not require a plaintiff seeking class

certification to prove that each element of her claim is susceptible to class-wide proof." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 469 (2013) (quotation and other alterations omitted). What it "does require is that common questions predominate over any questions affecting only individual" members of the Proposed Class. Id. (quotation omitted). Hence the standard is satisfied if the questions that can be resolved by class-wide proof "are more substantial than the issues subject only to individualized proof." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013) (quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)). The comparison of the comparative substantiality of the individual and common issues is driven by a concern for efficient adjudication; in answering the predominance question, a district judge decides "whether certification will 'reduce the range of issues in dispute and promote judicial economy.'" Johnson v. Nextel Commc'ns, Inc., 780 F.3d 128, 138 (2d Cir. 2015) (quoting Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 168 (2d Cir. 2001)).

Plaintiffs argue that common issues are predominant here because the "central" issue of fact is whether "NYU

conceal[ed] material information from its prospective Tisch Asia students." (Reply at 2.) NYU counters that the truth (or falsity) of specific representations, the extent of reliance, and the quantification of damages require individualized proof, outweighing any common issues and making adjudication on a class basis inefficient. (See Opposition 22-25.)

The Court finds that many of the most substantial questions in this case are amenable to class-wide proof: for instance, whether NYU had a "special relationship" with Tisch Asia students; whether NYU had an intent to defraud Tisch Asia students; whether NYU, by allegedly misrepresenting the true state of Tisch Asia, intended to induce reliance in Tisch Asia students; and whether NYU failed to impart to Tisch Asia students that Tisch Asia was unviable.

The Court therefore finds that while individualized questions do exist, common questions predominate.

2. Superiority

To determine whether a Rule 23(b)(3) class action is the superior way to proceed, the Court considers "the class members' interests in individually controlling the prosecution or defense of separate actions," the "extent and nature of any litigation concerning the controversy already

begun by or against class members," "the desirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs argue that denying certification "would potentially lead to duplicative and wasteful litigation," and many class members would not pursue their claims individually because of the ratio between the cost of litigation and expected recovery. (See Class Cert. Mem. at 29.) NYU responds that a class action would be "extremely difficult if not impossible to manage," let alone the superior manner of adjudication, given the individual evidence required to prove each class member's claims. (See Opposition at 29 (quotation omitted).)

The Court notes that the relevant question is not whether class action is the only way to adjudicate the Proposed Class members' claims, but whether it is the best available option. The Court finds that it would be suboptimal to litigate in potentially hundreds of cases the common questions at issue in this case, and potentially generate conflicting answers from case to case. Therefore, justice and judicial economy would be better served by answering the common questions in

a single proceeding, to be followed by separate proceedings on the individualized questions -- a familiar course in Rule 23(b)(3) class actions. See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016); Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010).

Thus, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of these claims.

### IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 91) of Plaintiffs Anna Basso, Amy Hartman, and Jaime Villa Ruiz to certify a class, pursuant to Federal Rule of Civil Procedure 23(b)(3), of all students who attended New York University Tisch School of the Arts, Asia, and to appoint Giskan, Solotaroff & Anderson LLP and Schwartz, Ponterio & Leveonson, PLLC as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) is **GRANTED**.

**SO ORDERED.**

Dated:   New York, New York
         21 February 2019

                                        Victor Marrero
                                        U.S.D.J.