UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA BASSO, AMY HARTMAN, and JAIME VILLA RUIZ, | Civil Action No. 16 Civ. 7295 (VM)(KNF) |
| Plaintiffs, | ECF CASE |
| - against - | ORAL ARGUMENT REQUESTED |
| NEW YORK UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
NEW YORK UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

VENABLE LLP
Michael J. Volpe
Benjamin E. Stockman
Sandy Schlesinger
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
t: (212) 307-5500
f: (212) 307-5598

*Attorneys for Defendant
New York University*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

I.   PRELIMINARY STATEMENT ......................................................................... 1

II.  STATEMENT OF FACTS .................................................................................. 2

III. ARGUMENT........................................................................................................ 2

    A.   Summary Judgment Standard ...................................................................... 3

    B.   Courts Do Not Typically Intervene in the Administration of Higher Education.......... 3

    C.   All Claims Are Time-Barred Either in Whole or in Part ............................. 4

    D.   Plaintiffs' Theory of Damages is Based on Impermissible Speculation...................... 6

    E.   Plaintiffs' Negligent Misrepresentation Claim Should be Dismissed .......................... 7

        1.   Plaintiffs Cannot Establish the "Special Relationship" Element of Negligent Misrepresentation..................................................................... 8

        2.   Plaintiffs' Claim is Barred By New York's Economic Loss Rule.................... 11

        3.   Plaintiffs Cannot Establish That They Reasonably Relied and Acted Upon NYU's Allegedly False Representations .......................................... 11

            i.   Many of the Allegedly False Representations Are Too Vague to Induce Reasonable Reliance ................................................................ 11

            ii.   Plaintiffs Failed to Establish They Actually Saw or Relied Upon the Allegedly False Representations.............................................. 12

        4.   Plaintiffs Cannot Establish that NYU Made Any Material, False Representation Because NYU Delivered Tisch Asia Students a Quality Education in All Respects ................................................................. 13

        5.   Plaintiffs Cannot Establish That NYU Caused Them Any Harm...................... 14

    F.   Plaintiffs' Fraud Claim Should be Dismissed ............................................. 14

        1.   Plaintiffs Cannot Establish That There was any Material Misrepresentation or Omission Made by NYU with Knowledge of its Falsity and Intent to Defraud 14

        2.   Plaintiffs Cannot Establish That They Reasonably Relied Upon Any Alleged Material Misrepresentations or That They Suffered Any Damage.................... 16

    G.   Plaintiffs' Breach of Contract Claim Should be Dismissed........................................ 16

        1.   Many of the Statements Cited by Plaintiffs Are Not Sufficiently Specific or Discrete to Form the Basis of a Claim ............................................ 17

        2.   Plaintiffs' Breach of Contract Claim is Rooted in Impermissible "Educational Malpractice" ................................................................ 17

        3.   Plaintiffs Cannot Establish any Breach of Contract Because NYU Delivered on the Representations Made in its Marketing Materials ........................ 19

## TABLE OF CONTENTS
## (con't)

Page

| | | | |
|---|---|---|---|
| | i. | Faculty and Instruction | 20 |
| | ii. | Internship Opportunities | 21 |
| | iii. | Access to Contests, Grants, and Networking Opportunities | 22 |
| | iv. | Curriculum | 22 |
| | v. | Facilities | 23 |
| | vi. | Equipment | 24 |
| H. | | Plaintiffs' Unjust Enrichment Claim Should be Dismissed | 25 |
| IV. | CONCLUSION | | 25 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alligood v. Cnty. of Erie*,
299 A.D.2d 840, 749 N.Y.S.2d 349 (2002) ............................................................8

*Ansari v. New York Univ.*,
No. 96 Civ. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ..................9

*Bango v. Naughton*,
584 N.Y.S.2d 942 (N.Y.App.Div.1992) ................................................................14

*Basso et al. v. New York Univ.*,
No. 16 Civ. 7295 (VM), 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017) .......................2, 16, 17

*Basso et al. v. New York Univ.*,
363 F. Supp. 3d 413 (S.D.N.Y. 2019) ...................................................................3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .............................................................................................3

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. 2012) .............................................................................25

*Elliott v. Nelson*,
301 F. Supp. 2d 284 (S.D.N.Y. 2004) .................................................................13

*Elsayed v. Maserati N. Am., Inc.*,
215 F. Supp. 3d 949 (C.D. Ca. 2016) .................................................................12

*Fane v. Zimmer, Inc.*,
927 F.2d 142 (2d Cir. 1991) ...............................................................................11

*Fialkov v. Alcobra Ltd.*,
No. 14 Civ. 09906 (GBD), 2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) ...........12

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) .....................................................................25

*Gomez-Jimenez v. N.Y. Law Sch.*,
103 A.D.3d 13 (1st Dep't 2012) ............................................................................9

*Hargrave v. Oki Nursey, Inc.*,
636 F.2d 897 (2d Cir. 1980) ..................................................................................9

iii

*Harris v. Dutchess Cty. Bd. of Co-op. Educ. Servs.*,
   50 Misc. 3d 750 (N.Y. Sup. Ct. 2015), *aff'd*, 170 A.D.3d 820 (2d Dep't 2019) ...................... 8

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
   723 F. Supp. 976 (S.D.N.Y. 1989) ...................................................................... 9, 12

*Hoffenberg v. Hoffman & Pollok*,
   248 F. Supp. 2d 303 (S.D.N.Y. 2003) .......................................................................... 5

*Hydro Inv'rs, Inc. v. Trafalgar Power, Inc.*,
   227 F.3d 8 (2d Cir. 2000) ................................................................................... 9, 14

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
   634 F. App'x 19 (2d Cir. 2015) ............................................................................. 4

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ........................................................................ 10

*Jeffers v. Am. Univ. of Antigua*,
   No. 153386/12, 2014 NY Slip Op 30669(U), (Sup. Ct., N.Y. Cnty. Mar. 12,
   2014) ............................................................................................................... 10

*Keles v. New York Univ.*,
   No. 91 Civ. 7457 (SWK), 1994 WL 119525 (S.D.N.Y. Apr. 6, 1994) ........................... 15, 16

*Kickertz v. New York Univ.*,
   110 A.D.3d 268 (1st Dep't 2013) ........................................................................... 9

*Lighthouse 925 Hempstead, LLC v. Sprint Spectrum L.P.*,
   No. 008798/11, 2012 WL 1497304 (Sup. Ct., Nassau Cnty. Apr. 17, 2012) ................... 20, 21

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................................ 11

*Matana v. Merkin*,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013) ................................................................... 5, 6

*Mihalakis v. Cabrini Med. Ctr.*,
   542 N.Y.S.2d 988 (App. Div. 1989) ....................................................................... 7

*Mopex, Inc. v. AMEX, LLC*,
   No. 02 Civ. 1656 (SAS), 2002 WL 342522, at *10 (S.D.N.Y. Mar. 5, 2002) ..................... 5

*Moy v. Adelphi Inst., Inc.*,
   866 F.Supp. 696 (E.D.N.Y.1994) ........................................................................... 8

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
   910 F.3d 293 (7th Cir. 2018) ............................................................................... 11

iv

*U.S. ex rel O' Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016)............................................................................................15

*Papaspiridakos v. Educ. Affiliates*, *Inc.*,
    No. 10 Civ. 5628, 2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013), *aff'd* 580
    Fed. Appx. 17 (2d Cir. 2014) ....................................................................................... *passim*

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)............................................................................................18

*Rabin v. Money Life Ins. Co.*,
    387 F. App'x 36 (2d Cir. 2010) .....................................................................................25

*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir. 1992) .................................................................................3, 17, 19

*Matter of Salvador v. Touro Coll.*,
    139 A.D.3d 1 (1st Dep't 2016) .......................................................................................9

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
    832 F. Supp. 2d 194 (E.D.N.Y. 2010) ......................................................................12, 17

*Sweeney v. Columbia Univ.*,
    270 A.D.2d 335, 704 N.Y.S.2d 617 (2d Dep't 2000) ....................................................9

*T & N PLC v. Fred S. James & Co. of New York, Inc.*,
    29 F.3d 57 (2d Cir. 1994)..............................................................................................6

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015)...........................................................................................4

*Tuosto v. Philip Morris USA Inc.*,
    No. 05 Civ. 9384 (PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .............................13

*Ward v. N.Y. Univ.*,
    No. 99 Civ. 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) .........17, 18, 19

*Weisblum v. Prophase Labs, Inc.*,
    No. 14 Civ. 3587, 2015 WL 738112 (S.D.N.Y. Feb. 20, 2015) ...........................................25

*Winter v. Am. Inst. of Med. Sciences & Educ.*,
    *242 F. Supp. 3d 206, 221 n.11 (S.D.N.Y. 2017)*.........................................................19

*Wynn v. AC Rochester*,
    273 F.3d 153 (2d Cir. 2001)............................................................................................15

*In re Xinhua Fin. Media, Ltd. Secs. Litig.*,
    No. 07 Civ. 3994 (LTS)(AJP), 2009 WL 464934 (S.D.N.Y. Feb. 25, 2009)..................12, 17

*Zimmerman v. UBS AG*,
   No. 17 Civ. 4503 (JMF), 2018 WL 4054860 (S.D.N.Y. Aug. 24, 2018) ...............................12

**Statutes**

C.R.S. §§ 13-80-101, 13-80-108 ...................................................................................................4

Cal Code Civ. Proc. §§ 337, 338(d), 339 .....................................................................................4

OCGA §§ 9-3-31, 9-3-33 ..............................................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) .....................................................................................................................4

Fed. R. Civ. P. 26(a) ...................................................................................................................11

Fed. R. Civ. P. 56 ..........................................................................................................................1

Fed. R. Civ. P. 56(a) .....................................................................................................................3

N.Y. C.P.L.R. § 202 ......................................................................................................................4

N.Y. C.P.L.R. § 203(g) .................................................................................................................6

N.Y. C.P.L.R. § 213(1)..............………………………………………………........................5

N.Y. C.P.L.R. § 213(2) .................................................................................................................5

N.Y. C.P.L.R. § 213(8) ...............................................................................................................5,6

N.Y. C.P.L.R. § 3211(a)(5)..........................................................................................................25

Pursuant to Federal Rule of Civil Procedure 56, Defendant New York University ("NYU"), by and through its attorneys, Venable LLP, submits this memorandum of law in support of Defendant's Motion for Summary Judgment.  NYU respectfully requests that the Court dismiss with prejudice all claims asserted against it.

## I.     PRELIMINARY STATEMENT

Anna Basso, Amy Hartman, and Jaime Villa Ruiz ("Plaintiffs" or "Named Plaintiffs") represent a class of former students who attended NYU's Tisch School of the Arts Graduate Film & Television campus in Singapore known as "Tisch Asia."  Above all else, NYU was dedicated to providing Tisch Asia students an enriching academic and artistic experience enhanced by professional development opportunities, and, in this regard, Tisch Asia succeeded.  NYU built state-of-the-art facilities, purchased cutting-edge equipment, hired well-established professionals as faculty, and offered students scholarships, grants, internships, and career opportunities as they pursued the identical degree offered to fellow Tisch students studying at NYU's Tisch School of the Arts Graduate Film & Television campus in New York ("Tisch NY").  Indeed, the Tisch Asia campus provided students an educational experience that was not only comparable to, but in some ways enhanced, that of Tisch NY.   Tisch Asia students went on to leverage their educations to produce award-winning films and scripts, including at the Cannes and Sundance Film Festivals, and to earn critical acclaim as filmmakers, writers, and directors after graduation.  In fact, two of the Named Plaintiffs described the Tisch Asia experience as one of the best and smartest decisions of their lives.  Despite these praises and the fact that Plaintiffs Basso and Villa Ruiz graduated in 2014 before Tisch Asia closed, with Plaintiff Hartman quitting her studies to pursue a professional opportunity obtained through Tisch Asia connections before the closure was even announced, they have sued NYU alleging that it failed to deliver as advertised.  That claim is incontestably false.

As a threshold matter, this case is time-barred entirely under New York's borrowing statute. Even affording Plaintiffs the longer statutes of limitations of New York, the unjust enrichment claim is untimely, and all other claims must be dismissed as time-barred as to any class members who enrolled in Tisch Asia prior to September 20, 2010, including Named Plaintiff Hartman. Moreover, Plaintiffs' lawsuit should be dismissed in its entirety because the evidentiary record developed during exhaustive discovery shows that there was no special relationship between Tisch Asia and its students, and New York's economic loss rule and educational malpractice doctrine preclude Plaintiffs' claims. Plaintiffs' twin failures to put at issue a single fact that would show any intent by NYU to defraud or that would show any harm to Plaintiffs, let alone harm caused by NYU, are also fatal. Indeed, NYU expended more than $20 million to sustain Tisch Asia, and the most senior members of NYU's administration worked tirelessly to increase student enrollment and private philanthropy and to negotiate with the Singapore government for additional funding and for a new operational model to sustain Tisch Asia. Moreover, when the closure was announced, all first-year students, including Plaintiff Basso, were offered a full refund of tuition, and all students who remained were given the opportunity to finish and receive the degree promised: a Masters of Fine Arts from NYU.

## II.   STATEMENT OF FACTS

NYU respectfully refers the Court to its 56.1 statement in support of summary judgment.

## III.   ARGUMENT

The remaining claims here are negligent misrepresentation, fraud, breach of contract, and unjust enrichment. *See Basso v. N.Y. Univ.*, 16 Civ. 7295 (VM), 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017) (Dkt. # 27). The Court certified a class of "all students who attended New York University Tisch School of the Arts, Asia" on three of those claims; Plaintiffs Basso, Hartman and

2

Villa Ruiz did not seek class certification of their breach of contract claim.  *See Basso v. N.Y. Univ.*, 363 F. Supp. 3d 413, 424-25 (S.D.N.Y. 2019) (Dkt. # 106).  For the reasons set forth below, each of the remaining claims should be dismissed with prejudice.

## A. Summary Judgment Standard.

Summary judgment is granted when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. Courts Do Not Typically Intervene in the Administration of Higher Education.

At the outset, this lawsuit must be seen for what it is: an attempt to circumvent the traditional bar against court review of the administrative decision-making in institutions of higher education. "General claims about the quality of an education 'are not statements of fact capable of proof, but rather opinions which should not provide a basis for the imposition of liability.'" *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10 Civ. 5628 (RJD)(JO), 2013 WL 4899136, at *3 (E.D.N.Y. Sept. 11, 2013), *aff'd* 580 F. App'x 17 (2d Cir. 2014) (quoting *Alligood v. Cty. of Erie*, 749 N.Y.S.2d 349 (App. Div. 2002)).  "New York courts consistently decline to entertain actions . . . where the essence of the complaint is that the school breached its agreement by failing to provide an effective education," because "professional educators–not judges–are charged with the responsibility for determining the method of learning that should be pursued for their students." *Papaspiridakos*, 2013 WL 4899136, at *3 (internal quotations omitted).  At most, courts assessing claims of educational malpractice look not into whether "an institution failed to perform *adequately* a promised educational service, but rather that it failed to perform that service *at all*," *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992) (emphasis added), and the undisputed record here shows that NYU far exceeded this standard.  As detailed in in Section G(3) *infra*, Tisch

Asia students received a first-rate education comparable to the sister program at Tisch NY.  This Court should bar any attempt to inquire further.

### C.  All Claims Are Time-Barred Either in Whole or in Part.

Where the basis of jurisdiction is the Class Action Fairness Act and diversity of citizenship, as here, the Court must apply New York's borrowing statute to determine the applicable statute of limitations ("SOL"), which "requires a non-resident plaintiff to file a claim within the shorter of either: 1) the New York SOL; or 2) the SOL in the jurisdiction in which the claim accrued," generally the place where the plaintiff resides and sustained economic loss.  N.Y. C.P.L.R. § 202; *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 21-22 (2d Cir. 2015); *Thea v. Kleinhandler*, 807 F.3d 492, 497-98 (2d Cir. 2015).  The Named Plaintiffs reside in California, Colorado and Georgia,[1] and their claims accrued in those states to the extent they relied upon NYU's alleged misrepresentations there.  The longest of the applicable SOL periods in any of these three states on any of the claims is four years,[2] and since all students enrolled before September 20, 2012 – the last semester Tisch Asia enrolled new students – the initial complaint, filed on September 20, 2016 is untimely under the limitation periods of these respective states.  Plaintiffs' claims are all time barred, and a class must be decertified where no Named Plaintiff has a timely claim.  *See* FED. R. CIV. P. 23(a).  The following chart demonstrates this point:

| Class Year Enrolled | Latest Enrollment | Complaint Filed | Enrolled to Filed |
|---|---|---|---|
| 2007-2008 | Summer 2007 | Sept. 20, 2016 | 9+ years |
| 2008-2009 | Summer 2008 | Sept. 20, 2016 | 8+ years |
| 2009-2010 | Summer 2009 | Sept. 20, 2016 | 7+ years |
| 2010-2011 | Summer 2010 | Sept. 20, 2016 | 6+ years |
| 2011-2012 | Summer 2011 | Sept. 20, 2016 | 5+ years |
| 2012-2013 | Summer 2012 | Sept. 20, 2016 | 4+ years |

---

[1] See Plaintiffs' Amended Complaint ¶ 4, annexed to the Volpe Decl., Exhibit A.

[2] California's SOL negligent misrepresentation is two years; for fraud is three years; and for breach of contract is four years. CAL CODE CIV. PROC. §§ 337, 338(d), 339.  Colorado's SOL for negligent misrepresentation, fraud, and breach of contract is three years.  *See* C.R.S. §§ 13-80-101, 13-80-108.  Georgia's SOL for negligent misrepresentation, fraud, and breach of contract is four years.  OCGA §§ 9-3-31, 9-3-33.

Even if all students are entitled to the New York statutes of limitations, the claims of students who enrolled in class years 2007-2008, 2008-2009, 2009-2010, and 2010-2011 are all time-barred, as are all claims for unjust enrichment.  The SOL for negligent misrepresentation, fraud, and breach of contract of the sort alleged here is six years.  N.Y. C.P.L.R. § 213(1)-(2), (8). The SOL for unjust enrichment claims seeking monetary damages, such as tuition reimbursement, is three years.  *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013).  Although the class was certified to include "all students who attended New York University Tisch School of the Arts, Asia," the unjust enrichment claims of all students must be dismissed as time-barred under the three-year SOL because Plaintiffs merely seek monetary damages in the form of disgorgement of alleged "wrongfully retained profits."  *See* Volpe Decl., Ex. A, ¶ 116.  All remaining claims should be dismissed as to students who enrolled in Tisch Asia before September 20, 2010 – six years before Plaintiffs filed their initial Complaint on September 20, 2016.  *See, e.g.*, *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (accrual date for unjust enrichment is the date of the act giving rise to right of restitution); *Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 309 (S.D.N.Y. 2003) (accrual date for fraud is the date of the commission of the wrongdoing); *Mopex, Inc. v. Am. Stock Exch., LLC*, No. 02 Civ. 1656 (SAS), 2002 WL 342522, at *10 (S.D.N.Y. Mar. 5, 2002) (accrual date for negligent misrepresentation is the date plaintiff relied upon alleged misrepresentation).  Under this case law, the SOL accrual date can be no later than the date students enrolled at Tisch Asia because each claim is premised on statements and alleged misrepresentations in the marketing of Tisch Asia to prospective students.  *See* Volpe Decl., Ex. A, ¶¶ 67-72, 96-104, 106-110, 115. The longer six-year SOL still bars all claims by students who enrolled in advance of the 2007-2008, 2008-2009, 2009-2010, and 2010-2011 academic years, including Named Plaintiff Hartman.

Plaintiffs cannot extend the SOL by arguing that a "misrepresentation by omission" theory delays the accrual date until the Tisch Asia closure was announced, since New York law is clear that the SOL for breach of express or implied contract and negligent misrepresentation does not accrue based on a plaintiff's knowledge of the occurrence of the wrong.  *T & N PLC v. Fred S. James & Co. of N.Y.*, 29 F.3d 57, 60 (2d Cir. 1994) ("[K]nowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running.") (internal quotations omitted).  Likewise, any argument that the fraud and unjust enrichment claims did not accrue until NYU announced the closure in November 2012 (i.e., delayed discovery of the alleged fraud) does nothing to extend the SOL here, as under that theory Plaintiffs' claims would have expired even earlier, in November 2014.  *See* N.Y. C.P.L.R. § 203(g); *Matana*, 957 F. Supp. 2d at 486-87, 494.  Plaintiffs advancing fraud claims are afforded the longer of "six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. §§ 203(g), 213(8).  All students who enrolled before September 20, 2010 are time-barred.

### D.  Plaintiffs' Theory of Damages is Based on Impermissible Speculation.

Plaintiffs claim that they were harmed because they paid the same in tuition to Tisch Asia as the tuition for Tisch NY, but their education was not worth the same cost.  *See, e.g.*, Volpe Decl., Ex. A, ¶¶ 3-4.  The case law is clear that a claim based on the theory that an education or degree was not worth the cost is speculative and thus not actionable under New York law.  *See Mihalakis v. Cabrini Med. Ctr.*, 542 N.Y.S.2d 988, 989-90 (App. Div. 1989) ("difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that defendants represented to plaintiff" was too speculative).  Since Plaintiffs' damages theory relies upon a speculative comparator school to demonstrate that Tisch

Asia was not worth the price of admission, Plaintiffs have failed to establish the damages elements of their claims.  *See id.*  ("The measure of damages in a fraud action is the difference between the value of what was given up and what was received in exchange, all elements of profit to be excluded.").

Plaintiffs who graduated from Tisch Asia received a quality education and an identical degree to Tisch NY graduates and thus received the benefit of the bargain.  *See, e.g.*, 56.1 ¶¶ 8, 20, 23-33, 213, 216, 218.[3]  Furthermore, Plaintiffs conducted no expert discovery in this matter and did not otherwise develop any record of a program outside of NYU comparable to Tisch Asia upon which a factfinder could infer that Tisch Asia was overvalued.  *id*.  Even if that were possible, no factfinder could determine whether the value difference was due to the alleged misrepresentations or a myriad of other factors, including the school's location, name recognition, strategy for attracting students, costs, or alumni network.   Moreover, the Named Plaintiffs each secured industry-related internships through their Tisch Asia connections and obtained film and television industry employment after graduation, including work on feature films, popular television shows, and in the coveted NBC Universal Page Program, and Tisch Asia alumni have achieved the highest levels of success in the industry, including winning awards at major film festivals.  *See, e.g.*, 56.1 ¶¶ 188, 190, 194, 195, 197-198, 201, 204, 204-208, 214, 217, 219, 222.  The record contains no evidence that Plaintiffs suffered harm resulting from any alleged misrepresentation by NYU.

**E.  Plaintiffs' Negligent Misrepresentation Claim Should be Dismissed.**

"New York law does not allow for a cause of action based on negligent misrepresentation in the educational context." *Moy v. Adelphi Inst., Inc.*, 866 F. Supp. 696, 706-07 (E.D.N.Y.1994);

---

[3] Plaintiff Hartman did not return for her third year at Tisch Asia.  She testified that she decided to pursue her career after obtaining employment through Tisch Asia faculty connections, and therefore never graduated from NYU.  56.1 ¶¶ 108, 219.  Her failure to complete her degree requires dismissal of her claims. *Mihalakis*, 542 N.Y.S.2d at 989-90.

*see also Alligood*, 749 N.Y.S.2d at 350 (claims based on misrepresentations about the quality or comparative quality of educational programs are not a basis for liability); *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (App. Div. 1982) ("negligent misrepresentations and judgmental errors ought not be actionable" and therefore claims regarding "comparative quality of the education . . . ought not provide a basis" of liability.); *Harris v. Dutchess Cty. Bd. of Coop. Educ. Servs.*, 25 N.Y.S.3d 527, 537 (Sup. Ct. 2015), *aff'd*, 93 N.Y.S.3d 910 (App. Div. 2019) ("Plaintiffs' negligent misrepresentation cause of action, although not construed as a claim for educational malpractice, is dismissed as barred by the State's public policy against maintaining negligence based claims against schools and school officials."). This bar on such "educational malpractice" claims is well established in New York, as discussed in more detail in Section G(2) *infra*.

Even if the Court finds that Plaintiffs' negligent misrepresentation claim is actionable, which it is not, Plaintiffs still need to prove: "(1) a duty, [arising from] a special relationship, to give correct information; (2) a false representation [by the defendant] that [the defendant] should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff did reasonably rely on it to his detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). A claim for negligent misrepresentation under New York law "require[s] that the alleged misrepresentations or omissions be material." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 983 n.4 (S.D.N.Y. 1989) (citing *White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977)).

1. **Plaintiffs Cannot Establish the "Special Relationship" Element of Negligent Misrepresentation**.

Plaintiffs' negligent misrepresentation claim fails because there was no "special relationship" between them and NYU.  Under New York law, no special relationship exists between university and its students.  *See, e.g.*, *Matter of Salvador v. Touro Coll.*, 27 N.Y.S.3d 44, 48-49 (App. Div. 2016) (granting motion to dismiss negligent misrepresentation claim due to lack of special relationship between student and law school); *Gomez-Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 60 (App. Div. 2012) (dismissing negligent misrepresentation claim based on law school's alleged fraudulent concealment of post-graduate employment statistics for lack of special relationship with prospective students); *see also Kickertz v. N.Y. Univ.*, 971 N.Y.S.2d 271, 279 (App. Div. 2013).

Tort claims against universities are generally not permitted by the courts because the relationship between a university and its students "is contractual in nature" and does not implicate any common law duty of care.  *Sweeney v. Columbia Univ.*, 704 N.Y.S.2d 617, 618 (App. Div. 2000).  Because college students are adults, it is "an ordinary buyer and seller relationship" entered at arm's length.  *Ansari v. N.Y. Univ.*, No. 96 CIV. 5280 (MBM), 1997 WL 257473, at *5-6 (S.D.N.Y. May 16, 1997); *Hargrave v. Oki Nursey, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980).  Plaintiffs' Amended Complaint asserts that a special relationship existed between them and NYU due to nothing more than "Tisch Asia campus' remote location requiring the students to relocate to Singapore – a foreign country with different currency, culture, and laws . . . ."  Volpe Decl., Ex. A, ¶ 101.

Students routinely travel long distances to attend institutions of higher education and study abroad does not satisfy the special relationship element.  *Jeffers v. Am. Univ. of Antigua*, 3 N.Y.S.3d 335, 338-39 (App. Div. 2015).  Of the 17 plaintiffs in *Jeffers*, 15 traveled abroad to attend a nursing school in Antigua and Barbuda, including one plaintiff from Cyprus who traveled

thousands of miles across multiple continents.  *Jeffers v. Am. Univ. of Antigua*, No. 153386/12, 2014 WL 1008115, at *1, 1 n.1 (N.Y. Sup. Ct. Mar. 12, 2014).   Yet the court in *Jeffers* found no special relationship between the school and its students, a conclusion that, as a policy matter, avoids what would otherwise be an undue burden on any school's study abroad programs.  *Jeffers*, 3 N.Y.S.3d at 338.  Tisch Asia's location cannot create a special relationship where one otherwise does not exist simply because some students traveled there for school.  This is particularly so because NYU did not undertake any duty distinct from the contractual duty between university and student by locating the Tisch Asia campus in a country that was foreign for some students but not for others.

Indeed, some students who attended Tisch Asia were *from Asia* and thus did not travel far and were fluent in the culture and language.  56.1 ¶ 20.  Moreover, the Named Plaintiffs all testified that their lawsuit did *not* relate to any aspect of their transition to life in Singapore and further testified that Tisch Asia was not responsible for arranging student housing or any other aspect of their transition, other than helping process student visas.  56.1 ¶¶ 122-125.  Accordingly, there is no connection between Tisch Asia's location and any alleged harm. To the contrary, Plaintiffs Villa Ruiz and Hartman testified that they had prior experience traveling abroad and all three Named Plaintiffs chose Tisch Asia out of a desire to study abroad.  56.1 ¶¶ 99, 102, 106, 125. Alumnus Chun testified that he chose Tisch Asia to make films in his native country of Korea. 56.1 ¶ 121.  This record makes clear that Plaintiffs would have had the same complaints had Tisch Asia been located in Hawaii rather than Singapore.  There are simply no facts upon which the Court can deviate from New York's longstanding precedent that no special relationship exists between a university and its students.

**2.   Plaintiffs' Claim is Barred By New York's Economic Loss Rule.**

Even if Plaintiffs were able to establish a special relationship—which they cannot—their negligent misrepresentation claim is barred under New York's "economic loss" rule.  Under the economic loss rule, actions in tort are barred when an action for contract is pled to redress economic harm. *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007).  In the absence of injury to person or property, New York law restricts plaintiffs seeking relief for economic loss to an action for contract.  *Id.*  Here, there is no evidence of any injury to Plaintiffs' persons or property and they simply seek tuition reimbursement.  Volpe Decl., Ex. A, ¶¶ 67-68, 96.  On this record, the economic loss rule requires dismissal of all negligent misrepresentation claims.  *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 308 (7th Cir. 2018) (applying New York's economic loss rule to dismiss claim).

**3.   Plaintiffs Cannot Establish That They Reasonably Relied and Acted Upon NYU's Allegedly False Representations.**

The Named Plaintiffs' testimony is clear that they did not rely or act upon NYU's allegedly false representations.[4]  Absent reliance, a claim for negligent misrepresentation must be dismissed. *See, e.g.*, *Fane v. Zimmer, Inc.*, 927 F.2d 124, 130 (2d Cir. 1991) (no negligent misrepresentation claim because no reliance by plaintiffs).

**i.   Many of The Allegedly False Representations Are Too Vague to Induce Reasonable Reliance.**

Many of the marketing representations alleged by Plaintiffs to be "promises" by NYU are what courts consistently deem too vague and lacking in specificity to induce reasonable reliance. *Fialkov v. Alcobra Ltd.*, No. 14 Civ. 09906 (GBD), 2016 WL 1276455, at *4 (S.D.N.Y. Mar. 30,

---

[4] Following motion practice, Magistrate Judge Fox precluded Plaintiffs from amending their Fed. R. Civ. P. 26(a) disclosures to add more than two-hundred student witnesses at the very end of the discovery period.  *See* Dkt. Nos. 69, 74, 77.  Accordingly, the class is bound by the testimony of the Named Plaintiffs in the record.

2016) (quotations omitted).[5]   On the record here, the alleged representations "world renowned," "meticulously selected," "working professional," "state of the art," and "strong ties to the industry" are inherently vague, subjective, immeasurable, and incapable of supporting reliance.  *See, e.g.*, *id.* (descriptors such as "meticulous . . . constitute mere puffery"); *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 960-61 (C.D. Ca. 2016) (allegation of "'[s]tate of the art engineering . . . for which [defendant] is world renowned'" is "generalized, nonactionable puffery"); *In re Xinhua Fin. Media, Ltd. Secs. Litig.*, No. 07 Civ. 3994 (LTS)(AJP), 2009 WL 464934, at *8 (S.D.N.Y. Feb. 25, 2009) ("To the extent that Plaintiffs' allegation focuses on [] adjectives . . . such as 'strong,' 'experienced,' and 'capable,' these soft adjectives are nothing more than puffery . . . ."); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) (phrase "state of the art" is "mere puffery" because it is "nothing more than opinion[]").

      **ii.**    **Plaintiffs Failed to Establish They Actually Saw or Relied Upon the Allegedly False Representations.**

The record shows that the Named Plaintiffs could not recall any specific representation from the Tisch Asia website upon which they relied in deciding to enroll.  *See* 56.1 ¶¶ 98, 103, 105, 110-111.   Basso enrolled because of Tisch's overall reputation and scholarship money; Hartman enrolled because of NYU's reputation and she wanted to live abroad; Villa Ruiz enrolled because of the Tisch brand and he wanted to live abroad.  56.1 ¶¶ 97, 99-100, 102, 104, 106, 109. The only other students who supplied testimony in this case also relied on factors other than Tisch Asia's marketing representations. *See* 56.1 ¶¶ 115, 117, 121 (Hannah: scholarship and interest in Asia; Giordano: impulsive decision and impressed with student films; Chun: wanted to make films

---

[5] Courts in New York use the same standard of materiality to assess both negligent misrepresentation and federal securities law claims.  *See, e.g.*, *Zimmerman v. UBS AG*, No. 17 Civ. 4503 (JMF), 2018 WL 4054860, at *4 (S.D.N.Y. Aug. 24, 2018) (concurrently analyzing negligent misrepresentation and securities fraud claims where allegedly omitted facts were either adequately disclosed or too speculative); *Hartford Fire Ins. Co.*, 723 F. Supp. at 990.

in home country of Korea).  The claim therefore fails.  *See, e.g.*, *Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384 (PKL), 2007 WL 2398507, at *9 (S.D.N.Y. Aug. 21, 2007) (dismissing negligent misrepresentation and fraud claims because there was no allegation that plaintiff saw the allegedly false advertisements and therefore failed to demonstrate reliance).

> ### 4.  Plaintiffs Cannot Establish that NYU Made Any Material, False Representation Because NYU Delivered Tisch Asia Students a Quality Education in All Respects.

Tisch Asia delivered its students a high-quality education commensurate with a Tisch NY education.  *See infra* Section G(3); *see Elliott v. Nelson*, 301 F. Supp. 2d 284, 287 (S.D.N.Y. 2004) (dismissing negligent misrepresentation claims because "alleged representations were not false when made").  The record is undisputed that: (1) the mandatory curriculum of Tisch Asia was identical to the mandatory curriculum of Tisch NY, with only minor variation in the electives offered (56.1 ¶¶ 20, 98); (2) Tisch Asia students received excellent quality of faculty and instruction, including full-time instruction by more than 12 faculty who also taught at Tisch NY (56.1 ¶¶ 31, 145, 152-53, 155, 156,157-159); (3) Tisch Asia students secured highly competitive internships through Tisch Asia connections (56.1 ¶¶ 179-200); (4) students had access to contests, grants, and networking opportunities (56.1 ¶¶ 165-177, 201-208); (5) world renowned artists held workshops and masterclasses (*see, e.g.*, 56.1 ¶¶ 165, 170, 171, 177); (6) the equipment and facilities were brand new and cutting edge (56.1 ¶¶ 20, 30); (7) Tisch Asia graduates received identical degrees to Tisch NY graduates (56.1 ¶ 8); and (8) Tisch Asia graduates obtained competitive jobs in their desired industries (*see, e.g.*, 56.1 ¶¶ 214, 217, 219, 222).

As to the Named Plaintiffs' allegation that NYU represented that Tisch Asia would be a "long-standing program," there is no evidence that this representation was ever made.  But even if it were made, there is no evidence to suggest that it was intentionally false when made, or that NYU should have known it was false. *Hydro Inv'rs,, Inc.*, 227 F.3d at 20; *Bango v. Naughton*,

584 N.Y.S.2d 942, 944 (App. Div. 1992).  As discussed in Section F(1) *infra*, NYU spent $20 million beyond budget and NYU leadership worked diligently to sustain Tisch Asia and was optimistic that it would be sustained despite its financial difficulties. *See* 56.1 ¶¶ 33-65.  None of NYU's actions surrounding the closure are consistent with Plaintiffs' theory.  Within days of learning that Singapore rejected a proposal to create a joint conservatory that would have provided financial stability for the campus, NYU suspended student recruitment.  56.1 ¶ 68.  Out of an abundance of caution, NYU offered tuition reimbursement to first year students who were enrolled at the time the closure plan was announced.  56.1 ¶¶ 81-82.  Most students declined the offer and finished their degrees, including Plaintiff Basso.  56.1 ¶¶ 83, 86.

### 5.  Plaintiffs Cannot Establish That NYU Caused Them Any Harm.

Plaintiffs cannot establish that they suffered any harm attributable to NYU for the reasons set forth in Section D *supra*.  As Plaintiffs fail to adequately set forth *any* element of their negligent misrepresentation claim – whether via affirmative representation or omission – their claim should be dismissed in its entirety.

### F.  Plaintiffs' Fraud Claim Should be Dismissed.

To set forth a fraud claim, a plaintiff must show by clear and convincing evidence: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

### 1.  Plaintiffs Cannot Establish That There was any Material Misrepresentation or Omission Made by NYU with Knowledge of its Falsity and Intent to Defraud.

The Amended Complaint alleges that NYU defrauded Plaintiffs when it allegedly misrepresented the quality of Tisch Asia and that "Tisch Asia would be a long lasting program" to

induce Plaintiffs to enroll.  Volpe Decl., Ex. A, ¶¶ 106-110.  But the record is undisputed that NYU created Tisch Asia to be of equivalent quality to Tisch NY, and an enduring campus with the backing of the Singapore government.  *See U.S. ex rel. O' Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662-63 (2d Cir. 2016) (no proof of contemporaneous fradulent intent and future guarantees not actionable); *Keles v. N.Y. Univ.*, No. 91 CIV. 7457 (SWK), 1994 WL 119525, at *7-8 (S.D.N.Y. Apr. 6, 1994) (fraud claim dismissed because the representations were true when made and there was no evidence of intent to deceive); 56.1 ¶¶ 8-17, 33-65.

Contrary to the Amended Complaint's unsupported allegation that "NYU was motivated by cutting the costs of the program while maximizing its profits," Tisch Asia was not created to be a profit-generating campus; rather NYU only expected it to break even through a combination of student tuition, philanthropy, and government assistance.  Volpe Decl., Ex. A, ¶ 108; 56.1 ¶¶ 14-16.  NYU poured more than $35 million into Tisch Asia, including approximately $20 million more than planned from 2007 through 2012, and undertook exhaustive efforts to sustain the school once the extent of its financial problems became apparent.  56.1 ¶¶ 37-63.  NYU continued to pump these resources into Tisch Asia for years despite losing approximately $6 million per year on the campus.  NYU would not have expended such immense amounts of money and resources if it intended to defraud Tisch Asia students.  *Id.*  The record shows that NYU never promised that "Tisch Asia would be a long lasting program," nor did it intend that Tisch Asia only be a five year project.  56.1 ¶¶ 9, 12-14, 33-35, 52-65, 88-93; *See Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (holding that the alleged representations pointed to by plaintiff were immaterial, since no explicit promises were made as to them).  Since there is no evidence that NYU knowingly made material misrepresentations about the quality or duration of Tisch Asia, the Court must dismiss Plaintiffs' fraud claim.

15

**2. Plaintiffs Cannot Establish That They Reasonably Relied Upon Any Alleged Material Misrepresentations or That They Suffered Any Damage.**

Plaintiffs' fraud claim must be dismissed because they cannot establish that they reasonably relied upon any alleged material misrepresentations for the same reasons set forth in Section E(3)(ii) *supra*, or that they suffered any harm for the reasons set forth in Section D *supra*. Even if they could demonstrate harm, they cannot prove a causal relationship between the alleged misrepresentations or omissions and such alleged harm. *See id.* Thus, Plaintiffs cannot prove damages and their fraud claim must be dismissed.

**G. Plaintiffs' Breach of Contract Claim Should be Dismissed.**

The Court should dismiss Plaintiffs Basso, Hartman, and Villa Ruiz's individual breach of contract claim because the undisputed facts demonstrate that the statements on which their claim is based are general claims about the quality of the education at Tisch Asia that are not actionable. To the extent the Amended Complaint alleges that NYU failed to perform "specifically designated and discrete promises," the record is undisputed that NYU delivered on such promises.

The "relationship between a university and its students is contractual in nature," with the "terms of the agreement … supplied by the bulletins, circulars and regulations made available to the student." *Basso*, 2017 WL 1019505, at *3 (citing *Papaspiridakos*, 2013 WL 4899136, at *2). To state a claim, a student must identify "'specifically designated and discrete promises' that were broken by the university," such as a designated number of hours of instruction or name on a diploma. *Papaspiridakos*, 2013 WL 4899136, at *4 (citations omitted). Moreover, the essence of a viable complaint "would not be that the institution failed to perform *adequately* a promised educational service, but rather that it failed to perform that service *at all*. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise." *Ross*,

957 F.2d at 417 (emphasis added); *see also Paladino*, 89 A.D.2d at 92 (claim might lie if a school "were simply to accept a student's tuition and thereafter provide no educational services" but that claims based on "the quality and adequacy of the course of instruction" are inactionable).

### 1. Many of the Statements Cited by Plaintiffs Are Not Sufficiently Specific or Discrete to Form the Basis of a Claim.

Here, many of the alleged statements cited by Plaintiffs Basso, Hartman and Villa Ruiz for their breach of contract claim go to the quality of educational experience and are not facts capable of proof. The terms "world renowned," "meticulously selected," "strong ties to the industry," "same artistic standards," "high level of teaching excellence," and "same quality" are inherently vague, subjective, and immeasurable. Volpe Decl., Ex. A, ¶¶ 22-23; *see* Section E(3)(i) *supra*. Underscoring this point, Plaintiffs Basso, Hartman and Villa Ruiz all had subjective definitions of these terms, whereas other students understood them to be marketing puffery. 56.1 ¶¶ 143-151. NYU's alleged statements are more akin to "general policy statements" and "broad and unspecified procedures and guidelines" that are "subject to neither quantification nor objective evaluation" than to "the types of specific promises which have led to valid breach of contract claims against universities." *Ward v. N.Y. Univ.*, No. 99 CIV. 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) (alleged promises "to provide a great learning environment" and "to provide supervision and teaching by honest and unbiased instructors," among others, are "broad pronouncements" that are "more akin to [inactionable] general statements of policy"); *see also Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 209; *Xinhua*, 2009 WL 464934, at *8. To the extent Plaintiffs seek to make out a breach of contract claim based on these subjective, vague, and immeasurable representations, the Court must dismiss the claim.

### 2. Plaintiffs' Breach of Contract Claim is Rooted in Impermissible "Educational Malpractice".

The remaining alleged marketing representations cited by Plaintiffs concern academic judgments that would require the Court to engage in improper review of pedagogical decision-making by Tisch Asia's administrators and faculty.  *See, e.g.*, *Papasiridakos*, 2013 WL 4899136, at *4-5 (granting summary judgment because plaintiff's claim about the adequacy of academic laboratory facilities would require "judicial displacement of [] educational determinations"); *see also Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 93-94 (2d Cir. 2011); *Paladino*, 454 N.Y.S.2d at 872-73 (finding claim not actionable "[w]here the essence . . . is that the school breached its agreement by failing to provide an effective education" because it requires court to "evaluate the course of instruction" and "displace[] . . . complex educational determinations").   The Amended Complaint asks the Court to assess whether "in sum and substance, Tisch Asia and Tisch NY were identical programs" and whether Tisch Asia "live[d] up to the level of Tisch NY in practically every aspect" such that the value of the education and professional training received equaled tuition costs.  *See* Volpe Decl., Ex. A, ¶¶ 3-4, 25-26, 70. New York case law is clear that such "educational malpractice" claims are impermissible.  *See* Section B *supra*.

For instance, Plaintiff Villa Ruiz testified that the basis for his breach of contract claim is that his Cinematography professor, Bill Tunnicliffe, allegedly used outdated lighting techniques. Volpe Decl., Ex. K at 198:23-25 – 199:1-10.  Plaintiff Basso testified that the basis for her breach of contract claim is that she was taught a class with a Tisch NY professor via skype – a course that she specifically requested and highly reviewed.  56.1 ¶¶ 163-64.  Plaintiff Hartman reaffirmed her qualitative assessment of Tisch Asia in glowing terms at her deposition.  56.1 ¶¶ 153, 155, 156. As in *Papaspiridakos* and *Ward*, Plaintiffs are impermissibly demanding that the Court evaluate the qualitative adequacy and effectiveness of the Tisch Asia faculty and course of instruction.  In

18

*Papaspiridakos*, the plaintiff alleged that the school failed to deliver on its promise to provide "qualified instructors." 2013 WL 4899136, at *4. The court granted the school's motion for summary judgment, holding "[a] school's faculty is the bedrock of any education. We cannot make any assessments about the qualification of educators without rendering a comprehensive judgment of the quality of the education plaintiff received." *Id.* at *5. And in *Ward*, even under more egregious facts where the student "may have found [the faculty's] techniques personally offensive, the fact that [faculty] may have utilized intimidating and militaristic teaching methods, and may even have been belittling towards Ward," the court still found that plaintiff did "not establish a valid cause of action for breach of contract." 2000 WL 1448641, at *4-5 (citation omitted). The reality is that most students will always prefer some professor's teaching style or methods over others, and the law does not permit students to bring suit over such preferences.

The evidence is clear that Plaintiffs' allegations are not capable of proof, cannot form the basis of a viable breach of contract claim, and are decisions left to educators. *See Winter v. Am. Inst. of Med. Sciences & Educ.*, 242 F. Supp. 3d 206, 221 n.11 (S.D.N.Y. 2017) (quoting *Alligood*, 749 N.Y.S.2d at 350); *Paladino*, 454 N.Y.S.2d at 873.

### 3. The Plaintiffs Cannot Establish any Breach of Contract Because NYU Delivered on the Representations Made in Its Marketing Materials.

Even if the Court were to reevaluate the pedagogical prerogatives of Tisch Asia – which it respectfully should not do – such review would be limited to whether NYU performed the specific educational services alleged to have been breached *at all*, and *not* whether NYU *adequately* performed those educational services. *Ross*, 957 F.2d at 417. The undisputed record shows that Tisch Asia students received a first-rate education comparable to the sister program at Tisch NY and obtained a Masters of Fine Arts Degree identical to Tisch NY students. The testimony of Plaintiff Hartman underscores this record: she praised her experience at Tisch Asia in glowing

terms, obtained employment on a desirable career path through Tisch Asia faculty, left Tisch Asia without finishing her degree to pursue her career, and then expressed a desire to return to finish her degree after the announcement that the campus was closing.  56.1 ¶¶ 23-25, 108, 152-155, 219-221.  It is obvious from this record that the Named Plaintiffs fail to set forth a viable claim for breach of contract.  *See Lighthouse 925 Hempstead, LLC v. Sprint Spectrum L.P.*, No. 008798/11, 2012 WL 1497304, at *1 (N.Y. Sup. Ct. Apr. 12, 2012) (granting summary judgment dismissal since defendant never breached any promise).

### i.      Faculty and Instruction.

NYU stated on its website that the faculty at Tisch Asia were: "world renowned," comprised of "working professionals," "meticulously selected to teach" because of their "strong ties to the industry," "NYU full-time faculty," and of the "same level of teaching excellence" and of the "quality" of those teaching in any Tisch program.  56.1 ¶¶ 88, 93.  Plaintiffs Basso, Hartman and Villa Ruiz testified that they were aware of faculty information provided on the Tisch Asia website prior to enrolling, and therefore knew or could have known who would teach their classes before they enrolled.  56.1 ¶¶ 98, 103, 106, 109, 110.  This alone renders the claim that certain professors lacked professional experience baseless.

Moreover, all Tisch Asia faculty members about whom Plaintiffs complain had recent professional experience when they taught at Tisch Asia.[6]  56.1 ¶¶ 132-142, Burke Decl. ¶¶ 6-26.  The record is clear that Tisch Asia professors were selected in substantially the same manner as the professors of Tisch NY, with consideration of their ties to the industry and professional reputations.  *Id.* ¶ 4.  Tisch Asia employed more full-time faculty per student than did Tisch NY, which regularly hires adjunct professors.  56.1 ¶ 130.  Many faculty members from Tisch NY

---

[6] The sole exception was Drayton Hiers, who was a Tisch Asia alum hired as an adjunct professor, as was common practice at Tisch NY. 56.1 ¶ 128.

traveled to Tisch Asia to teach semester-long courses, lectures, and workshops. 56.1 ¶ 127. In fact, the Named Plaintiffs testified that the Tisch brand and faculty on the whole were world renowned. 56.1 ¶¶ 144, 145. Each admitted that the vast majority of their professors provided valuable classroom experiences and they enjoyed their classes, 56.1 ¶¶ 152-153, 155, 156, which underscores the reality that Plaintiffs' contract claim (and this entire suit) is nothing more than an impermissible educational malpractice action. *Papaspiridakos*, 2013 WL 4899136, at *3, 5.

### ii.   Internship Opportunities.

The Tisch Asia website stated that NYU "instituted internships, mentorships and work projects from hundreds of media related companies here in the tri-state area." 56.1 ¶ 91. Plaintiffs Basso, Hartman, and Villa Ruiz claim that this promise was not met because NYU allegedly failed to provide them with the opportunity to gain the same or comparable internships, part-time jobs, or resume building opportunities as Tisch NY students, and because internships and mentorships were not advertised or promoted to Tisch Asia students. Volpe Decl., Ex. A, ¶¶ 6, 23, 37, 39. The evidentiary record refutes these claims. First, NYU only represented that internships, mentorships, and work projects would be available in the "tri-state area," and not in Singapore. Moreover, Plaintiffs Basso, Hartman and Villa Ruiz all admitted they obtained internships of their choosing through Tisch Asia connections, and the record is undisputed that Tisch faculty and administrators served as mentors to students and helped them secure internships and jobs at major networks, film festivals, and production companies. 56.1 ¶¶ 179-200, 214, 217, 219, 222. Specifically, Plaintiff Basso obtained a summer internship at AMC Networks, Sundance Global in Summer 2013 through the Tisch internship blog maintained by Tisch's Director of Internships, Adam Underhill. 56.1 ¶ 188. Plaintiff Hartman obtained an internship at the Palm Springs Film Festival in Summer 2012, followed by a full-time job at a production house, which she obtained through an introduction

made by Tisch Asia faculty member, Kathleen McInnis.  56.1 ¶ 198.  Plaintiff Villa Ruiz obtained

internships with a Singaporean production company, Nike, and Google, and Tisch Asia faculty

member Ramon Menendez assisted Plaintiff Villa Ruiz in his search for work in Asia.  56.1 ¶¶

191, 192, 195, 197.  Plaintiffs Villa Ruiz and Hartman also worked as teaching assistants at Tisch

Asia during their studies and in Tisch Asia's state of the art production facilities.  56.1 ¶ 194, 198.

### iii.    Access to Contests, Grants, and Networking Opportunities.

The Amended Complaint alleges that Tisch Asia students did not have the opportunity to

apply for certain artistic contests and grants, including NYU's Purple List screenwriting contest,

NYU's First Run Film Festival, and NYU's Richard Vague Awards.  Volpe Decl., Ex. A ¶¶ 41-

42.  It further alleges that Tisch Asia students did not have the opportunity to avail themselves of

the same networking opportunities as Tisch NY students.  *Id*. at ¶¶ 6, 41-44.  These claims must

be dismissed.  First, NYU never made any specific representations in its marketing materials that

such opportunities would be available, and Plaintiffs Basso, Hartman and Villa Ruiz could not

recall any such representations.  56.1 ¶¶ 98, 105, 110-11.  Second, Plaintiffs appear to have

abandoned this theory entirely, alternately testifying that their claims in this lawsuit do not relate

to contests, grants, and networking opportunities, or that they did not recall any specific contests

or grants for which they were ineligible.  *See, e.g.*, 56.1 ¶ 202-203.  Plaintiffs Basso and Hartman

did not even pursue any contests, and Plaintiff Villa Ruiz worked on a film that was in the First

Run Film Festival and won a Tisch Asia Craft Award for cinematography.  56.1 ¶¶ 202, 204.

Finally, Tisch Asia alumnus Hannah confirmed that Tisch Asia students were eligible for (and

won) Richard Vague awards and production grants.  56.1 ¶ 205.  The undisputed record clearly

refutes the conclusory allegations in the Amended Complaint.

### iv.    Curriculum.

NYU stated on the Tisch Asia website that it would offer an "identical curriculum" to that offered at Tisch NY.  56.1 ¶ 88.  Importantly, the course offerings and faculty at Tisch Asia were available for review by prospective students on the Tisch Asia website.  56.1 ¶¶ 87, 98, 110, 131.  Moreover, the evidence is clear that the core curriculum of Tisch Asia was identical to the required curriculum of Tisch NY.  56.1 ¶ 20.  The one or two courses specifically cited in the Amended Complaint were elective courses at Tisch NY.[7]  Anyone who has attended an institution of higher education understands that electives vary from semester to semester based on many factors, including student interest, current trends and developments in the field, and the experience, backgrounds, interest, and availability of faculty – all of which are inherently pedagogical choices. *Papaspiridakos*, 2013 WL 4899136, at *3, 5.  It is undisputed that the core curriculum, which was identical to Tisch NY, is what is required to obtain the Masters of Fine Arts degree offered at both campuses.  56.1 ¶¶ 8, 20.  A few variations of elective offerings, dependent on pedagogical factors, cannot form the basis for a breach of contract claim.  *Paladino*, 454 N.Y.S.2d at 873.

   v.      **Facilities.**

NYU represented that it would provide "state of the art production facilities" and ensure that the facilities at Tisch Asia "are of the same quality that have been established at the New York campus."  56.1 ¶¶ 88, 93.  Plaintiffs allege that these promises were not met because there were a "myriad of issues with the [Tisch Asia] campus" and the campus was still under construction and in "poor condition" when the students arrived in 2007.  Volpe Decl., Ex. A, ¶¶ 22, 52.  These allegations pre-date the arrival of Plaintiffs Basso, Hartman and Villa Ruiz by years and the Court

---

[7] Plaintiff Villa Ruiz complained that Entertainment Business Law was not offered during a semester that he wanted to take it, but he admitted he had no knowledge of the curriculum before enrolling and the course was offered in other semesters at Tisch Asia. 56.1 ¶ 105. Plaintiff Basso complained that she was forced to take an elective course over Skype, when in fact she was offered in-person instruction for the course but complained to Tisch Asia administration that she did not want to be taught by the professor offered for strictly academic reasons. Tisch Asia then created a custom elective course for Plaintiff Basso at her request, which included instruction by Skype because she requested to be taught by Tisch NY professors. 56.1 ¶¶ 160-164.

has not certified this claim class-wide.  Although construction was ongoing in Fall of 2007, the facilities were completed and "state of the art" as of Spring 2008, years before any of the individual Plaintiffs arrived.  Plaintiffs Hartman and Villa Ruiz confirmed that the facilities were state of the art as of their arrival on campus in 2010 and 2011, respectively. 56.1 ¶ 30.  Further, the record independently shows that the Tisch Asia facilities were at least of the same quality as the Tisch NY facilities, if not better, as the Tisch Asia building housed two soundstages, a black box theater, two screening rooms, and classrooms all within one building, while Tisch NY had two soundstages in separate buildings, a black box theater in the Tisch Drama Department, and Tisch NY students shared these facilities with other undergraduate and graduate students. 56.1 ¶ 30.  For any and all of these reasons, Plaintiffs Basso, Villa Ruiz and Hartman, have no basis for any allegation related to the facilities, and in any event any claim arising from them is time-barred.  *See* Section C, *supra*.

> ### vi.   Equipment.

NYU stated that equipment at Tisch Asia would be "of the same quality that [has] been established at the New York campus."  56.1 ¶ 93.  The Amended Complaint alleges that this promise was not met because Tisch Asia students were not provided with the "same equipment as their New York counterparts" and the equipment at Tisch Asia was inferior to the equipment at Tisch NY.  Volpe Decl., Ex. A, ¶¶ 5, 51.  The sole example alleged is that Tisch Asia film students had to shoot using "handycams," whereas Tisch NY students used Arriflex 16 mm professional film cameras.  *Id.* ¶ 51.  The undisputed record refutes this frivolous allegation. Tisch Asia students were provided with brand new equipment equivalent to or better than that provided to Tisch NY students, including the same camera (Arriflex 16) noted in the Amended Complaint, and Tisch Asia students had more access to better cameras than their Tisch NY counterparts.  56.1 ¶ 30; *See Papaspiridakos*, 2013 WL 4899136, at *4 (granting summary judgment on plaintiff's unsupported

allegations that defendant failed to provide "adequate classroom facilities" and "[l]abs [] delivered in equipped laboratories").[8]

### H. Plaintiffs' Unjust Enrichment Claim Should be Dismissed.

Plaintiffs' unjust enrichment claim warrants dismissal because it is time-barred and indistinguishable from the other remaining claims and Plaintiffs obtained the benefit of the bargain. To state a claim for unjust enrichment, a plaintiff must show "(1) the [enrichment of the defendant] (2) at the plaintiff's expense and (3) under circumstances of such enrichment equity and good conscience require the defendant to make restitution." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014). Here, Plaintiffs' alleged factual bases and relief sought for unjust enrichment are identical to their other claims and should be dismissed as duplicative. *Rabin v. Money Life Ins. Co.*, 387 F. App'x 36, 42 (2d Cir. 2010); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Moreover, as discussed in Section D *supra*, even if Plaintiffs' unjust enrichment claim were distinct from the other claims, the speculative nature of their alleged damages renders the first two elements of the claim nonviable. For these reasons, this claim must be dismissed.

### IV.   CONCLUSION

For all of the foregoing reasons, NYU respectfully requests that the Court grant its motion for summary judgment in its entirety, dismiss the Amended Complaint in its entirety with prejudice, and grant such other and further relief that this Court deems just and proper.

---

[8] The only evidence presented regarding the use of "handycams" comes from alumnus Stephanie Bousley, who stated that the students in her first year class (2007-2008) had to use handycams for first-year film exercises. [Cite]. These allegations fall well outside the applicable six-year SOL for breach of contract claims. *See* N.Y. C.P.L.R. § 3211(a)(5). Moreover, the same was true of Tisch NY students, who also used handycams for their first-year film exercises because first-year directing exercises do not require any special type of camera and are simply pedagogical exercises in basic shot-framing. 56.1 ¶ 30

Dated:  February 28, 2020
New York, New York

VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
t: (212) 307-5500
f: (212) 307-5598

By:   /s/*Michael J. Volpe*
Michael J. Volpe
Benjamin E. Stockman
Sandy Schlesinger
*Attorneys for Defendant*
*New York University*

26