UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNA BASSO,
AMY HARTMAN, and
JAIME VILLA RUIZ,

            Plaintiffs,

       v.

NEW YORK UNIVERSITY,

          Defendant.

Civil Action No. 16 Civ. 7295 (VM) (KNF)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**

**<u>NEW YORK UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT</u>**

**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 10th Floor
New York, NY 10004
Telephone: (212) 847-8315

**SCHWARTZ, PONTERIO & LEVENSON, PLLC**
134 West 29th Street – Suite 1006
New York, New York 10001
Telephone: (212) 714-1200

*Attorneys for Plaintiffs and the Certified Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

I.    NYU HAS WAIVED ANY STATUTE OF LIMITATIONS DEFENSE ............................. 2

A.    NYU Failed to Plead a Statute of Limitations Defense .................................................... 3

B.    Alternatively, the Parties Agreed to the Application of the New York Law .......................... 4

C.    NYU's SOL Argument Fails on the Merits ..................................................................... 5

D.    Defendant May Not Use the SOL to Narrow the Class Under Rule 56 ................................. 6

II.    PLAINTIFFS HAVE NOT ASSERTED A CLAIM FOR EDUCATIONAL
MALPRACTICE .................................................................................................................. 8

III.    ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ........................................... 10

A.    Issues of Fact Exist on Plaintiffs' Fraud Claim ............................................................ 10

1.    Whether NYU Made Material Misrepresentations or Omissions is an Issue of Fact .... 11

    a.    NYU Concealed that Tisch Asia's Finances Were Precarious .......................................... *11*

    b.    NYU Concealed that Tisch Asia Lacked the Full Support of NYU ................................... 13

    c.    NYU Misrepresented Material Facts About the Tisch Asia Program ............................... 14

2.    Whether NYU Intended to Defraud its Students is an Issue of Fact ................................ 16

B.    Issues of Fact Exist on Plaintiffs' Negligent Misrepresentation Claim................................ 17

1.    Whether NYU Had a "Special Relationship" with Tisch Asia Students Is an Unresolved
Factual Issue...................................................................................................................... 18

2.    Whether NYU, By Failing to Disclose to Tisch Asia Students That Tisch Asia Was Not
Viable, Intended to Induce Reliance in Tisch Asia Students, Is an Unresolved Issue of Fact ..... 19

C.    Issues of Fact Exist on Plaintiffs' Breach of Contract Claim................................................ 20

D.    Issues of Fact Exist on Plaintiffs' Unjust Enrichment Claim................................................ 23

E.    Damages Must Be Presented To A Jury ......................................................................... 23

Conclusion ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*3Com Corp. v. Banco do Brasil, S.A.*,
  171 F.3d 739 (2d Cir. 1999) ............................................................................... 5

*Andre v. Pace Univ.*,
  170 Misc. 2d 893 (App. Term 1996) ................................................................ 21

*Ansari v. N.Y. Univ.*,
  96 Civ. 5280 (MBM), 1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997) ............. 9, 21, 22

*Babiker v. Ross Univ. Sch. of Med.*,
  98 Civ. 1429 (THK), 2000 U.S. Dist. LEXIS 6921 (S.D.N.Y. May 19, 2000) ........................ 21

*Basso v. N.Y. Univ.*,
  2017 U.S. Dist. LEXIS 34790 ................................................................... 8, 18, 24

*Basso v. N.Y. Univ.*,
  363 F. Supp. 3d 413 (S.D.N.Y. 2019) (Dkt. No. 106) ........................................ *passim*

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
  378 F. Supp. 2d 377 (S.D.N.Y. 2005) .................................................................. 21

*Brecher v. Republic of Arg.*,
  2010 U.S. Dist. LEXIS 95566,  (S.D.N.Y. Sep. 14, 2010) ........................................ 7

*Buccino v. Cont'l Assurance Co.*,
  578 F. Supp. 1518 (S.D.N.Y. 1983) .................................................................... 6

*Childers v. N.Y. & Presbyterian Hosp.*,
  36 F. Supp. 3d 292 n.2 (S.D.N.Y. 2014) ............................................................... 6

*Cohen v. Office Depot, Inc.*,
  204 F.3d 1069 (11th Cir. 2000) ........................................................................ 7

*Deen v. New Sch. Univ.*,
  2007 U.S. Dist. LEXIS 25295 (S.D.N.Y. Mar. 27, 2007) ......................................... 22

*Enzo Biochem v. Johnson & Johnson*,
  87 Civ. 6125 (KMW), 1992 U.S. Dist. LEXIS 15723 (S.D.N.Y. Oct. 14, 1992) ..................... 17

*Geffner v. Iona Coll.*,
  2013 U.S. Dist. LEXIS 144850 (S.D.N.Y. Oct. 2, 2013) ......................................... 25

*Golden Pacific Bancorp v. Federal Deposit Ins. Corp.*,
    273 F.3d 509 (2d Cir. 2001)................................................................................................ 23

*In re Initial Public Offering Securities Litigation* ("*In re IPO*"),
    483 F.3d 70 (2d Cir. 2007)................................................................................................... 7

*In re J.P. Morgan Chase Cash Balance Litig.*,
    255 F.R.D. 130  (S.D.N.Y. 2009) ........................................................................................ 8

*Introna v. Huntington Learning Ctrs., Inc.*,
    78 A.D.3d 896, 899 N.Y.S.2d 442 (2d Dept. 2010)........................................................... 11

*J.A.O. Acquisition Corp. v. Stavitsky*,
    8 N.Y.3d 144, 831 N.Y.S.2d 364 (2007) ........................................................................... 18

*Kimmel v. Schaefer*,
    89 N.Y. 2d 257 (1996) ....................................................................................................... 18

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*,
    157 F.3d 956 (2d Cir. 1998)............................................................................................... 23

*Matter of Harris v. Dutchess County Bd. of Coop. Educ. Servs.*,
    50 Misc. 3d 750 (N.Y. Sup. Ct. 2015) ............................................................................... 22

*Maya NY, LLC v. Hagler*,
    2013 NY Slip Op 3621, ¶ 2, 106 A.D.3d 583 N.Y.S.2d 475 (1st Dept. 2013) .......................... 6

*Mostaghim v. Fashion Inst. of Tech.*,
    No. 01 Civ. 8090 (HB), 2002 U.S. Dist. LEXIS 10968 (S.D.N.Y. June 18, 2002) ................. 21

*Moy v. Adelphi Inst.*,
    866 F. Supp 696 (E.D.N.Y. 1994)...................................................................................... 10

*Novak v. Kasaks*,
    216 F.3d 300, 2000 WL 796300 (2d Cir. 2000)................................................................. 17

*Paladino v Adelphi Univ.*,
    89 A.D.2d 85 (2d Dept. 1982)....................................................................................... 17, 22

*Papaspiridakos v. Educ. Affiliates, Inc.*,
    No. 10 CV 5628 (RJD) (JO), 2013 U.S. Dist. LEXIS 129748 (E.D.N.Y. Sep. 11, 2013)........ 21

*Pefanis v. Westway Diner, Inc.*, 2010
    U.S. Dist. LEXIS 93180 (S.D.N.Y. Sep. 7, 2010) ............................................................... 7

*Perez-Webber v InterCoast Career Inst.,*
   2:16-CV-00196-JAW, 2018 WL 2347061 (D. Maine 2018) .................................................. 25

*Samuels v. Fradkoff,*
   38 A.D.3d 208 (1st Dept. 2007) ........................................................................................... 19

*Schwarzschild v. Tse,*
   69 F.3d 293 (9th Cir. 1995) ................................................................................................... 7

*Smith Barney, Harris Upham & Co. v. Luckie,*
   85 N.Y.2d 193 ........................................................................................................................ 3

*Sound Video Unlimited, Inc. v. Video Shack, Inc.,*
   700 F. Supp. 127 (S.D.N.Y. 1988) ....................................................................................... 17

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank,*
   250 F. 3d 87 (2d Cir. 2001) .................................................................................................. 18

*Suez Equity Investors, L.P. and SEI Associates v. The Toronto-Dominion Bank, et al.,*
   250 F.3d 87 (2nd Cir. 2001) ................................................................................................. 10

*United States SEC v. Boock,*
   750 F. App'x 61 (2d Cir. 2019) (citations omitted) ................................................................ 3

*VR Optics, LLC v. Peloton Interactive, Inc.,*
   No. 16-CV-6392 (JPO), 2017 U.S. Dist. LEXIS 132509 (S.D.N.Y. Aug. 18, 2017).............. 11

*Ward v. N.Y. Univ.,*
   99 Civ. 8733 (RCC), 2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sep. 25, 2000)...................... 20

*Winmar Co. v. Teachers Ins. & Annuity Ass'n of Am.,*
   870 F. Supp. 524 (S.D.N.Y. 1994) ......................................................................................... 4

**Statutes**
New York General Business Law § 349 .............................................................................. 3, 4

New York General Business Law § 350 .............................................................................. 3, 4

N.Y. C.P.L.R. § 213 .................................................................................................................. 6

**Other Authorities**
Singapore Limitation Act 6(1)(a) (Chapter 163, 1996 Revised Edition) ........................................ 5

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................................ 7

Fed. R. Civ. P. 8(c) ................................................................................................... 3, 4

Plaintiffs submit this memorandum of law in opposition to Defendant New York University's ("NYU") Motion for Summary Judgment.  Plaintiffs respectfully request that the Court deny NYU's motion.

## PRELIMINARY STATEMENT

Defendant NYU's summary judgment motion is essentially a rehashing of its previous arguments in support of its motion to dismiss and its opposition to class certification. As this Court has already found, the claims here are not educational malpractice claims but rather claims relating to specific misrepresentations and acts of concealment on the part of NYU.

NYU falsely represented that Tisch Asia was the same program as Tisch New York even though Tisch Asia was inferior in several significant, specific and objective ways.  NYU failed to impart the true state of Tisch Asia – that the institution was unviable, and the educational experience it provided was not equal to that of Tisch New York – to the entire Tisch Asia student body with an intent to induce reliance for enrollment purposes.  It also concealed from students the lack of support on the highest level of NYU's administration for Tisch Asia, and that NYU's administration would never allow Tisch Asia the very thing it needed to sustain the program: an undergraduate program. Had NYU been honest with potential students about the program, they would not have enrolled.

NYU's statute of limitations arguments should be rejected. By failing to raise a statute of limitations affirmative defense in its Answer or in its motion to dismiss, NYU has clearly waived that defense.  Even if NYU had not waived the statute of limitations defense, it has waived the sub-argument that the statute of limitations should be determined by the law of the state of Plaintiffs' residences at the time of the filing of the Complaint. The parties have argued and applied New York law throughout this action, and the Court has ruled under New York law. NYU cannot now change gears at this stage of the case.

1

As this Court has previously held, there are issues of fact concerning each of the claims in this action.[1]

NYU is also incorrect that Plaintiffs theory of damages is speculative. Plaintiffs maintain that they would not have attended Tisch Asia had NYU disclosed the true state of affairs. As such, they are seeking a refund of the tuition paid. NYU is free to argue that Plaintiffs received something of value, and can ask the jury to deduct that value from any damage award. But a jury can assess NYU's conduct, and award damages accordingly.

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to their 56.1 Statement in opposition to Defendant's motion for summary judgment.

## ARGUMENT

## I.   NYU HAS WAIVED ANY STATUTE OF LIMITATIONS DEFENSE

For the first time in almost four years of litigation, NYU argues that all of the claims of the Named Plaintiffs – Anna Basso, Amy Hartman, and Jaime Villa Ruiz – are time-barred.[2] NYU claims that, because the Named Plaintiffs resided outside of New York as of the date of the filing of the Amended Complaint, their claims accrued in foreign states and New York's borrowing statute must be applied.[3]  Because each of the foreign states in which the Named Plaintiffs resided – Georgia, Colorado, and California – have shorter statutes of limitations than New York's, Defendant argues the claims are barred.[4]  NYU's newly-raised statute of limitations argument must be rejected for several reasons.

---

[1] *See Basso v. N.Y. Univ.*, 363 F. Supp. 3d 413, 424-25 (S.D.N.Y. 2019) (Dkt. No. 106).
[2] *See* Memorandum of Law in Support of Defendant New York University's Motion for Summary Judgment ("Def. MOL") at 4.
[3] Def. MOL at 4.
[4] *Id*.  NYU does not undertake an analysis of any tolling provisions in the Georgia, Colorado, and California statutes, as required by law.  *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193,

## A.  NYU FAILED TO PLEAD A STATUTE OF LIMITATIONS DEFENSE

First, by failing to assert the statute of limitations ("SOL") as an affirmative defense in its Answer and in its Motion to Dismiss, NYU has waived the argument and cannot raise it now for the first time.  Rule 8(c) of the Federal Rules of Civil Procedure provides: "in pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . . and any other matter constituting an avoidance or affirmative defense."  Fed. R. Civ. P. 8(c).  "[A]n argument that a statute of limitations bars an action is waived if not raised in the answer to the complaint."  *United States SEC v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (citations omitted).

In this case, NYU had several opportunities to plead a statute of limitations affirmative defense as to all of Plaintiffs' claims, but failed to do so.[5]  First, after Plaintiffs filed their original Complaint on September 20, 2016,[6] Defendant expressed its intention to file a Motion to Dismiss.[7]  In Defendant's correspondence regarding its proposed motion, it never argued that all claims were time-barred based on New York's borrowing statute, as it now argues, although it did argue that Plaintiffs' claims under New York General Business Law §§ 349 and 350 were barred by the SOL,[8] demonstrating that Defendant had considered SOL as a defense and devised its legal strategy accordingly.

Second, after Plaintiffs filed its Amended Complaint on January 6, 2017, Defendant wrote another letter to Plaintiffs expressing its intent to file a Motion to Dismiss,[9] and sought

---

207 (1995) ("In borrowing the foreign statute, all the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the entire foreign statute of limitations . . . applies, and not merely its period.") (internal quotation marks and alterations omitted).

[5] *See* Answer to First Amended Class Action Complaint ("Answer") (Dkt. No. 29).

[6] *See* Class Action Complaint ("Compl.") (Dkt. No. 5).

[7] *See* NYU Letter dated October 31, 2016 (Dkt. No. 15).

[8] *See id*.

[9] *See* NYU Letter dated January 17, 2017 (Dkt. No. 26).

3

leave from the Court to so move.[10]  In its motion, NYU set forth seven distinct arguments,

including – again – an argument that Plaintiffs' GBL §§ 349 and 350 claims were time-barred.[11]

Once again, NYU did not put forth any other argument related to the SOL.

Third, and most significantly for the purposes of Rule 8, after NYU's motion to dismiss

was denied and it filed its Answer, NYU asserted seven affirmative defenses, none of which

raised the SOL.  NYU should not be permitted to subvert the purpose of Rule 8(c) by asserting

an affirmative defense more than three years after filing its Answer.  *Winmar Co. v. Teachers*

*Ins. & Annuity Ass'n of Am.*, 870 F. Supp. 524, 533 (S.D.N.Y. 1994) (rejecting defendant's

argument that a late-asserted SOL defense was "meritorious and, therefore, 'justice so requires'

that [defendant] be permitted to pursue it" as subversive to Rule 8(c)).  NYU missed its

opportunity to raise this defense.[12]  The Court should not entertain it at this late stage.[13]

## B.  ALTERNATIVELY, THE PARTIES AGREED TO THE APPLICATION OF THE NEW YORK LAW

Prior to submitting the present motion, NYU never argued, or even suggested, that

anything but New York law applies to this case.  In all prior proceedings in this case – including

pleadings, discovery disputes, and letter-motions, motions, and a petition to the Second Circuit –

the Plaintiffs and Defendant have made their legal arguments based on New York law alone, and

---

[10] *See* NYU Letter dated January 31, 2017 (Dkt. No. 25).  The Court construed the correspondence submitted by NYU as a motion by NYU to dismiss the FAC pursuant to Rule 12(b)(6) (Dkt No. 27).
[11] *See* NYU Letter dated January 17, 2017 at 3.
[12] Perhaps acknowledging, and further enforcing, its waiver of the SOL defense, NYU never argued in its opposition to Plaintiffs' motion for class certification that the class period should be anything but the one argued by the Class.  *See* Memorandum Of Law In Support Of Defendant New York University's Opposition To Plaintiffs' Motion For Class Certification (Dkt. No. 97).
[13] Furthermore, NYU had all the information it needed to plead a SOL defense in it Answer.  In support of its argument that Plaintiffs reside out of state, Defendant relies solely on the Amended Complaint.  *See* Def. MOL at 4.  NYU cites no testimony, document, or other piece of evidence that demonstrates where Plaintiffs were at the time when they relied upon NYU's misrepresentations.  In other words, NYU did not need discovery to make its SOL defense, since it relies on the pleadings alone.  Therefore, NYU cannot in good faith argue that the SOL argument was not available to it when it filed its Answer.

the Court has always issued its rulings in this case based on New York law.  "The parties rely exclusively on New York substantive law, and where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."  *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir. 1999) (quotation omitted).  Indeed, in presenting the Rule 23 predominance requirements in their motion for class certification, Plaintiffs noted: "There are no choice of law issues here that would defeat predominance. On the motion to dismiss, the parties only briefed New York law, and the Court applied New York law to Plaintiffs' claims."[14]  NYU did not dispute that point. The court should consider only New York law in deciding this motion.

### C.    NYU'S SOL ARGUMENT FAILS ON THE MERITS

Assuming arguendo that the Court finds that NYU has not waived a SOL defense, Defendant's argument fails on the merits.  NYU proclaims, in a conclusory fashion, that the Named Plaintiffs' claims accrued in the states where they were domiciled in September 2016.[15] But if the law of any foreign jurisdiction applies here, it would be Singapore law, because the Named Plaintiffs resided in Singapore as students during much of the time when NYU concealed information regarding the state of affairs at Tisch Asia.

Under Singapore law, "actions founded on a contract or on tort" must be brought no later than "6 years from the date on which the cause of action accrued."  Singapore Limitation Act 6(1)(a) (Chapter 163, 1996 Revised Edition).  This conforms with the New York statutes of limitations for the claims presented in this case. *See Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 313 n.2 (S.D.N.Y. 2014) (SOL for "negligent misrepresentation is six years from the date of the alleged misrepresentation.") (citation omitted); N.Y. C.P.L.R. § 213(8)

---

[14] Memorandum of Law in Support of Plaintiffs' Motion for Class Certification at 29, n.28 (Dkt. No. 92).
[15] Def. MOL at 4.

(fraud action must be commenced within six years); N.Y. C.P.L.R. § 213(8) ("an action upon a contractual obligation or liability" "must be commenced within six years"); *Maya NY, LLC v. Hagler*, 2013 NY Slip Op 3621, ¶ 2, 106 A.D.3d 583, 585, 965 N.Y.S.2d 475, 477 (1st Dept. 2013) ("where, as here, the unjust enrichment and breach of contract claims are based upon the same facts and pleaded in the alternative, a six-year statute of limitations applies"). Exactly when the true state of affairs was revealed to Tisch Asia students is a factual dispute that cannot be resolved on summary judgment, *see Buccino v. Cont'l Assurance Co.*, 578 F. Supp. 1518, 1523 (S.D.N.Y. 1983) (noting courts "have been especially reluctant to grant summary judgment when questions of fraud and its discovery have been at issue"), and would certainly be no earlier than November 2012, when NYU announced the closing of Tisch Asia.[16]

### D.    DEFENDANT MAY NOT USE THE SOL TO NARROW THE CLASS UNDER RULE 56

On February 21, 2019, this Court certified the class of "all students who attended New York University Tisch School of the Arts, Asia," and found that the three Named Plaintiffs were adequate class representatives.[17]  Notice has not yet been distributed to the class, and therefore class members have not been given an opportunity to opt out.

NYU has chosen to direct its motion for summary judgment at the three Named Plaintiffs, rather than wait until notice is distributed.[18]  Therefore, any decision rendered by this Court on the present motion will be binding only on any of the three Named Plaintiffs, and not on the class. *Brecher v. Republic of Arg.*, 2010 U.S. Dist. LEXIS 95566, at *6 (S.D.N.Y. Sep. 14, 2010) ("Numerous other courts have emphasized the importance of class notice before the

---

[16] *See* Plaintiffs' Rule 56.1 Statement ("Pls' Rule 56.1 Stmt") at ¶ 78.
[17] *Basso*, 363 F. Supp. 3d at 424-25.
[18] Plaintiffs had previously proposed filing the proposed Notice with the Court in early 2020; Defendant rejected the proposal and insisted on filing the present motion.  *See* Plaintiffs' Letter dated January 14, 2020 (Dkt. No. 119).

merits of the case are adjudicated.") (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) and *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)).  Despite Defendant's strange choice to proceed with its summary judgment motion prior to the distribution of notice, it now contends that "a class must be decertified where no Named Plaintiff has a timely claim."[19]  Thus, in urging the Court to uphold its late SOL defense, NYU is also advocating that the Court limit the class size.  A motion for summary judgment is not the proper mechanism to attain such relief.  *See Pefanis v. Westway Diner, Inc.*, 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sep. 7, 2010) (denying defendant's motion to decertify and, its motion, in the alternative, for partial summary judgment).  Defendant acknowledges, as it must, that this Court has certified the class of "all students who attended New York University Tisch School of the Arts, Asia."[20]  Rather than seek redress through a motion to amend or decertify the class – which NYU would surely lose because it cannot meet the standard – it masks the relief sought as pursuant to Rule 56.  Given NYU's insistence that its summary judgment motion proceed prior to the distribution of notice, it is particularly unfair and inappropriate for Defendant to now suggest that the class be decertified or amended.

"An order that that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C); *see also In re Initial Public Offering Securities Litigation* ("*In re IPO*"), 483 F.3d 70, 72-73 (2d Cir. 2007) ("A district court does have discretion to alter or amend a class action ruling before final judgment.").  Despite this discretion vested in the district court, "there must be some development or change in circumstances to merit revisiting a class certification decision."  *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133-34 (S.D.N.Y. 2009) (citation omitted).

---

[19] *See, e.g.*, Def. MOL at 4, 5, 6.
[20] Def. MOL at 2, 5 (citing *Basso*, 363 F. Supp. 3d at 424-25).

Here, since this Court certified the class in February 2019, there has been no change in circumstances.  No new facts that have arisen.  In fact, the only event that could be characterized as a development in the case is an order from the Second Circuit denying NYU's Rule 23(f) petition.[21]  Discovery has not been reopened and notice has not been sent to the class.  Therefore, NYU has no cognizable grounds on which to request that the Court amend the class.[22]

## II.   PLAINTIFFS HAVE NOT ASSERTED A CLAIM FOR EDUCATIONAL MALPRACTICE

The Court should again decline to entertain NYU's argument that this case is one asserting a cause of action for educational malpractice.[23]  Plaintiffs are aware that such a claim is not permitted under New York law, and have not attempted to assert one.  Plaintiffs have never asked the Court to make assessments or render judgment regarding "any educational decisions of the sort which should be left to educators."  *Ansari v. N.Y. Univ.*, 96 Civ. 5280 (MBM), 1997 U.S. Dist. LEXIS 6863, at *11 (S.D.N.Y. May 12, 1997).  Rather, Plaintiffs have identified several specific promises made by NYU, such as:

- On a website for prospective Tisch Asia students, NYU claimed that "**There are no differences between the education received in Singapore and the education received in New York**" and that both the New York and Singapore programs "have

---

[21] Shortly after this Court's Decision and Order on class certification, Defendant filed an unsuccessful Petition to the Second Circuit, pursuant to F.R.C.P. 23(f).  *See* Appellate Case No. 19-573.  Due to the pendency of the Rule 23(f) Petition, Plaintiffs consented to Defendant's request to stay summary judgment briefing (Dkt. No. 110).  The Second Circuit heard oral argument on the Rule 23(f) Petition on December 11, 2019, and promptly issued a written decision denying Defendant's request (Dkt. No. 112).

[22]  The law of the case doctrine also "counsels a court against revising its prior rulings in subsequent stages of the same case absent compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (citation omitted).

[23] For years, NYU has been attempting to mischaracterize Plaintiffs' claims as allegations of educational malpractice.  *See* Letter to Judge Marrero dated Jan. 31, 2017 at 3 (Dkt No. 25); Memo Of Law In Support Of Defendant's Opposition To Plaintiffs' Motion For Class Certification at 27 (Dkt No. 97); NYU Motion for Leave to File Reply in Support of its Rule 23(f) Petition at 5-6, 11 (Appellate Case No. 19-573).  This Court has already rejected NYU's argument. *See Basso v. N.Y. Univ.*, No. 16-CV-7295 (VM), 2017 U.S. Dist. LEXIS 34790 (S.D.N.Y. Feb. 24, 2017) (Dkt. No. 27 at 7-10).  Still, even today NYU persists in misconstruing this case as one asserting educational malpractice. Def. MOL at 3-4, 7-8, 17-19.

the same number of students, identical curriculum, **state of the art production facilities**, and are taught by Tisch School of the Arts **world-renowned faculty**." NYU promised that Tisch Asia would be "**staffed by NYU full-time faculty**."[24]

- A Message from the Chair of Tisch Asia Film Program that was posted on an NYU website promised that Tisch Asia had "**instituted internships, mentor ships** [*sic*] **and work projects from hundreds of media related companies here in the tri-state area**"; that "**All faculty are working professionals**"; **and that Tisch Asia was** "**insuring that the faculty, equipment, and facilities are of the same quality** that have been established at the New York campus[.]"[25]

Discovery revealed that, contrary to NYU's promises, Tisch Asia was merely a five-year experiment, doomed from its inception by poor planning and a lack of institutional support. Although the differences between Tisch Asia and Tisch New York were immediately apparent to NYU administrators, for years NYU continued to represent that there were "no differences" between the two programs and charged the same tuition to Tisch Asia students.[26]  Where the factfinder is not required "to review any educational decisions of the sort which should be left to educators," the educational malpractice doctrine does not come into play.  *Ansari v. N.Y. Univ.*, 96 Civ. 5280 (MBM), 1997 U.S. Dist. LEXIS 6863, at *11 (S.D.N.Y. May 12, 1997).

Here, Plaintiffs do not ask for an inquiry into the quality of their education.  To that end, Defendant's continued assertions that "New York law does not allow for a cause of action based on negligent misrepresentation" and "Plaintiffs' breach of contract claim is rooted in impermissible 'educational malpractice'" are nothing more than another misleading attempt to recast Plaintiffs' claims.[27]  The Court should decline Defendant's attempts to relitigate this point.

---

[24] NYU Tisch School of the Arts Asia: Prospective Graduate Student FAQ, 2007-2012, Answer to Question 1, *available at* https://web.archive.org/web/20121105052049/http:/www.tischasia.nyu.edu.sg/object/TischAsiaFAQ.html (last visited June 20, 2020) (emphasis added) ("Tisch Asia FAQ").
[25] Message from the Chair of Tisch Asia Film Program, 2008-2011, *available at* https://web.archive.org/web/20081003120137/http://www.tischasia.nyu.edu.sg/object/filmchairmessage.html (last visited June 20, 2020) (emphasis added) ("Chairman's Letter").  For full letter, *see* FAC ¶ 23.
[26] *See* Pls' Rule 56.1 Stmt at ¶¶ 5, 6.
[27] *See* Def. MOL at 7 (citing *Moy v. Adelphi Inst.*, 866 F. Supp 696, 706-07 (E.D.N.Y. 1994)); *id*. at 17.

III.    **ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT**

Defendant's motion for summary judgment cannot succeed because there are numerous factual issues in dispute, which this Court implicitly acknowledged in its granting of class certification.  In fact, NYU has not identified *any* substantive basis for summary judgment that has not been ruled upon – and rejected – already.

In its Decision and Order dated February 21, 2019, this Court recognized that this case primarily concerns NYU's concealment of the true state of affairs at Tisch Asia.  It identified several questions of fact that remain unresolved, including: "whether NYU had a 'special relationship' with Tisch Asia students; whether NYU had an intent to defraud Tisch Asia students; whether NYU, by allegedly misrepresenting the true state of Tisch Asia, intended to induce reliance in Tisch Asia students; and whether NYU failed to impart to Tisch Asia students that Tisch Asia was unviable."  *Basso*, 363 F. Supp 3d at 425.

### A. ISSUES OF FACT EXIST ON PLAINTIFFS' FRAUD CLAIM

A fraud claim under New York law is defined as "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury."  *Suez Equity Investors, L.P. and SEI Associates v. The Toronto-Dominion Bank, et al.*, 250 F.3d 87, 104-105 (2nd Cir. 2001).  Additionally, "New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair."  *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2017 U.S. Dist. LEXIS 132509, at *11-12 (S.D.N.Y. Aug. 18, 2017) (quotation and citation omitted)).  In the school context, "Misrepresentations included in brochures and other materials, and not in the contract itself, may

10

constitute the basis of a cause of action sounding in fraud." *Introna v. Huntington Learning Ctrs., Inc.*, 78 A.D.3d 896, 899, 911 N.Y.S.2d 442, 445 (2d Dept. 2010).

       1.      <u>Whether NYU Made Material Misrepresentations or Omissions is an Issue of Fact</u>

NYU states that it "created Tisch Asia to be of equivalent value to Tisch NY, and an enduring campus with the backing of the Singapore government."[28] On the contrary, there is plenty of evidence that the Tisch Asia program could never be equal to Tisch New York and that Tisch Asia never had the full support or financial backing of the NYU administration. Rather than disclose the true state of Tisch Asia, for years NYU continued to tout that the two programs were identical while simultaneously scrambling to boost enrollment through admissions.[29] It omitted facts that would have shown students that Tisch Asia was doomed to fail.

       a.     *NYU Concealed that Tisch Asia's Finances Were Precarious*

Tisch Asia was financially doomed from its inception. The school's financial troubles were readily apparent to NYU administrators, but they were intentionally kept secret from Tisch Asia prospective and enrolled students.

First, the construction of the Tisch Asia campus was substantially over budget, leading Tisch Asia to spend nearly its entire operating budget for the first two years on renovation costs.[30] Many costs, including the cost of sand, were substantially higher than NYU had anticipated.[31] This was the result of a hastily created program.

---

[28] Def. MOL at 15.

[29] A review of the Tisch Asia program conducted in 2011 found that the acceptance rate in Tisch Asia was 10 times higher than in NY. Five Year Review Preliminary Report, 2, dated 11/5/2011, attached at the Giskan Decl. as **Exhibit 1**.

[30] Deposition Transcript of Pari Shirazi ("Shirazi Dep.") at 50-52. Portions of the transcript are attached to the Giskan Decl. as **Exhibit 2**.

[31] Shirazi Dep. at 51.

Second, in contrast to the costs, enrollment was far lower than projected.[32]  By the end of the first year, Tisch Asia knew its financial situation was unsustainable.[33]  Tisch Asia founder and President Dr. Pari Shirazi asked NYU for recruitment assistance but did not receive support.[34]  Then-Provost David McLaughlin observed in 2011: "absent much larger contributions from [Economic Development Board] and/or further contributions from Tisch NY, enrollments would have to double without an increase of expenses to get close to financial sustainability. On the face of it, this would not seem to be feasible."[35]

Third, NYU commenced operation of Tisch Asia without realizing that tuition was subject to a 7% tax by the Singapore government.[36]  With the tax applied, the school was unsustainable for this reason alone.  Dr. Shirazi was able to negotiate a five-year grant from the Singapore government to cover the tax, but this created a ticking time bomb that hung over Tisch Asia for its first five years and threatened the school's very existence.[37]

The cloud over Tisch Asia only darkened over time.  The cash flow problem was described internally as severe,[38] and there were concerns about even making payroll or paying Tisch Asia's bills.[39]  Tisch Asia was not able to pay back its loan from the Singaporean government.[40]  Yet, all the while NYU continued to: enroll new students, charge the same tuition at Tisch Asia that was charged at Tisch NY, and promise that the programs had "no differences."

---

[32] Deposition Transcript of David McLaughlin ("McLaughlin Dep.") at 180, 198.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 3.**
[33] Deposition Transcript of Mary Schmidt Campbell ("Campbell Dep.") at 86.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 4**.
[34] Shirazi Dep. at 127, 174; McLaughlin Dep. at 167.
[35]  *See* Pls' Rule 56.1 Stmt at ¶ 18.
[36] Shirazi Dep. at 38.
[37] *See* Pls' Rule 56.1 Stmt at ¶ 16.
[38] Campbell Dep. at 168.
[39] *See* Pls' Rule 56.1 Stmt at ¶¶ 30, 31.
[40] Shirazi Dep. at 252.

b.    *NYU Concealed that Tisch Asia Lacked the Full Support of NYU*

Discovery also revealed that NYU concealed the fact that it withheld financial support from Tisch Asia.  NYU referred to Tisch Asia was a "school project," not a "university project,"[41] a significant distinction because only the latter receive proper planning and support from the NYU administration.[42]  Tisch Asia was seen as a "startup,"[43] an "experiment"[44] and a "project,"[45] as opposed to being an integrated part of the long history and tradition of Tisch NY.[46]  Tisch Asia was certainly not the same program as the storied Tisch New York program.

NYU took insufficient steps to sustain Tisch Asia after the program began losing money.  Indeed, from the beginning, Provost McLaughlin was more worried about the lack of a financial benefit to Tisch New York than he was about Tisch Asia.[47]  Provost McLaughlin's lack of support was also evidenced by his concern that NY faculty would leave for Tisch Asia,[48] and the effect of Tisch Asia on NYU expansion plans in New York.[49]

To make Tisch Asia's graduate program financially sustainable, Dr. Shirazi proposed the opening of an undergraduate program,[50] a proposal that was rejected by the NYU administration – even though the Singaporean government was very interested in developing a joint undergraduate program with the National University of Singapore ("NUS").  No one from NYU

---

[41] Deposition Transcript of John Sexton ("Sexton Dep.") at 74-75.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 5**. *See also* Pls' Rule 56.1 Stmt at ¶ 19.
[42] McLaughlin Dep. at 188.
[43] *See* Pls' Rule 56.1 Stmt at ¶ 20.
[44] *Id*.
[45] *Id*.
[46] Deposition of Wendy Hammond ("Hammond Dep.") at 66-67. Portions of the transcript of Wendy Hammond's deposition are attached to the Giskan Declaration as **Exhibit 6**.
[47] Email from David McLaughlin to Mary Schmidt Campbell and Michael C. Alfano, dated 8/4/2008, attached to the Giskan Decl. as **Exhibit 7**.
[48] Shirazi Dep. at 86.
[49] *Id*. at 88.
[50] *See* Pls' Rule 56.1 Stmt at ¶ 25; *see also* Hammond Dep. at 58-59; McLaughlin Dep. at 84-85 (undergraduate program at Tisch NY sustains the graduate program).

could identify problems with the proposal,[51] even though Dean Campbell acknowledged that an undergraduate program would have created a greater revenue base.[52]   NYU President Sexton did not support an undergraduate program in Singapore,[53] as the evidence shows that he favored his own "university projects" in other foreign locations.[54]   Because of NYU's lack of financial support, Tisch Asia was forced to seek more money from the Singaporean government, which conditioned its funding on NYU committing to a joint undergraduate program in Singapore.[55] NYU continued to reject any undergraduate program, effectively forcing Tisch Asia's closure.[56]

These facts were never disclosed to Tisch Asia students.[57]

c.   *NYU Misrepresented Material Facts About the Tisch Asia Program*

**Artistic Director**. Tisch Asia promised that its Artistic Director would "teach, advise thesis projects for selected 3rd year students, give advice about potential working professionals who may be able to serve as full-time faculty or adjuncts, and who will assist in establishing contacts with constituencies in a range of professional communities."[58]   Tisch Asia's Artistic Director – Oliver Stone – barely fulfilled even one of those promises.   He visited Tisch Asia

---

[51] *See e.g.*, McLaughlin Dep. at 78.
[52] Campbell Dep. at 68.
[53] *See* Pls' Rule 56.1 Stmt at ¶ 25.
[54] *Id*.
[55] McLaughlin Dep. at 191-193.
[56] *Id*.
[57] Deposition of Stephanie Bousley ("Bousley Dep.") at 88.   Portions of the transcript of Stephanie Bousley's deposition are attached to the Giskan Decl. as **Exhibit 8**.
[58] *See* Pls' Rule 56.1 Stmt at ¶ 55.

once or twice a year at most and held a workshop, and was not available to students or faculty otherwise.[59]  There is no evidence that he performed any of the tasks in the description above.[60]

**Faculty**.  NYU specifically represented to the Plaintiffs and other similarly situated class members that "[Tisch Asia] faculty are working professionals in the industry,"[61] that "each member of the faculty has been meticulously selected to teach at [Tisch Asia] because of their strong ties to the industry,"[62] and that "[a]ll programs that are in both New York and Singapore … are taught by Tisch School of the Arts world-renowned faculty."[63]  These promises were unfulfilled.  Although Tisch Asia was initially staffed with many of NYU's New York faculty, over time, the school hired less qualified faculty; at least one teacher was a fresh graduate of Tisch Asia.[64]  After the school announced its closure in the fall of 2012, students worried that professors would leave Tisch Asia, and they would be taught by faculty unequal to that of Tisch NY.[65]  Even NYU administrators acknowledged the lesser qualifications of Tisch Asia professors compared to Tisch New York faculty members.[66]  Many students at Tisch Asia also complained that certain lectures, or even entire courses, were taught over Skype or by e-mail.[67]

---

[59] Deposition of Amy Hartman ("Hartman Dep.") at 67.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 9**; Deposition of Jaime Villa Ruiz ("Villa Ruiz Dep.") at 108-09.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 10**; Deposition of Anna Basso ("Basso Dep.") at 238-240.  Portions of the transcript are attached to the Giskan Decl. as **Exhibit 11**; Bousley Dep. at 178, 293.

[60] In contrast, Spike Lee, Tisch New York's Artistic Director, was deeply involved at the school:  He taught a class every year; provided internship; invited prominent colleagues to give lectures at his classes; provided input to Dean Campbell on the graduate film program; recruited students; provided guidance on curriculum; hired students after graduation to work on his films; helped students network; and maintained office hours for students, even if they were not in his class.  *See* Campbell Dep. at 295-301.

[61] *See* Chairman's Letter, *supra* note 25.

[62] *See* About Tisch Asia: An American Education in Asia, 2007-2015, *available at* https://web.archive.org/web/20100430014746/http:/www.tischasia.nyu.edu.sg/page/about.html (last visited June 26, 2020).

[63] *See* Tisch Asia FAQ, *supra* note 24.

[64] Basso Dep. 140-141.

[65] *See* Pls' Rule 56.1 Stmt at ¶ 81.

[66] *See id*. at ¶¶ 60, 61, 64, 65.

[67] *See id*. at ¶ 62.

**Career development.**  NYU, through the Tisch Asia website, promised that professional development for Tisch Asia students would be on par with what was offered to Tisch NY students: "[W]e have instituted internships, mentorships and work projects from hundreds of media related companies here in the tri-state area."[68]  This statement bore no resemblance to the experience of Tisch Asia students.  Testimony in this case showed that Tisch Asia students lacked important career development and networking opportunities crucial to the media world that were readily available to Tisch New York students.[69]  Tisch Asia also lacked the funds to proceed with career development initiatives, internships were hard to come by,[70] and Tisch Asia students did not have access to the same scholarships or grants available to Tisch NY students.[71]

**Facilities**.  When it announced the opening of Tisch Asia, NYU promised that the school would be "equipped with state-of-the-art technology and production facility" and that it would "feature the same outstanding production resources as those at the New York campus."[72]  Both the facilities and equipment in Singapore, however, were substandard and nowhere near equal to those in New York.[73]

2.   Whether NYU Intended to Defraud its Students is an Issue of Fact

NYU argues that it because it "expended such immense amount of money and resources" it could not have intended to defraud Tisch Asia students.[74]  But there is ample evidence that

---

[68] *See* Chairman's Letter, *supra* note 25.
[69] Basso Dep. at 85; Bousley Dep. at 199-201; Hartman Dep. at 70-73, 75, 102-104, 109, 212; Villa Ruiz Dep. at 122, 134-135.
[70] Shirazi Dep. at 193, 244-45.
[71] Hammond Dep. at 18; Bousley Dep. at 101.
[72] *NYU's Tisch School of the Arts Opens Singapore Campus*, Dec. 13, 2006, available at https://www.nyu.edu/about/news-publications/news/2006/december/nyus_tisch_school_of.html (last visited June 26, 2020).
[73] Though it was not a primary basis for their claims, the Plaintiffs did identify issues relating to the facilities.  *See* Basso Dep. at 261-263 (noting the campus was "run down," not "current," and "not facilities that you would expect at a very well-known school"); Hartman Dep. at 82-84, 137, 158-159 (discussing broken appliances and equipment.  *See also* Bousley Dep. at 64-66, 70, 100-101, 209.
[74] *See* Def. MOL at 15.

16

NYU made false promises and omitted information while admitting more and more students, pretending everything was great at Tisch Asia.  Fraudulent intent may be inferred where a defendant's "knowledge of facts or access to information contradict[s] their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308, 2000 WL 796300, at *7 (2d Cir. 2000).  "New York courts have denied summary judgment when a plaintiff has demonstrated the existence of specific facts from which a jury might infer that defendants engaged in a scheme or plot to defraud plaintiff." *Enzo Biochem v. Johnson & Johnson*, 87 Civ. 6125 (KMW), 1992 U.S. Dist. LEXIS 15723, at *35-36 (S.D.N.Y. Oct. 14, 1992) (citations omitted).

NYU knew that it could not fulfill its promise to Tisch Asia students of providing an identical program to the one enjoyed by Tisch New York students.  "An action for fraudulent misrepresentation in the educational context bespeaks an abuse of the trust imparted to our educators and should be entertained by the courts. Deception has no place in the educational process." *Paladino v Adelphi Univ.*, 89 A.D.2d 85 (2d Dept. 1982).  Based on all the evidence available – the lack of resources at Tisch Asia, NYU's seemingly willful lack of knowledge about how to operate a business in Singapore, its refusal to salvage Tisch Asia with an undergraduate program, and its concealment of facts from its students – NYU's intent to defraud should be inferred.  Summary judgment should not be granted when the existence of fraudulent intent "largely hinges upon the credibility of the various parties to the alleged fraud[.]" *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 135 (S.D.N.Y. 1988).

**B.      ISSUES OF FACT EXIST ON PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM**

NYU omitted material information concerning the Tisch Asia program.  Specifically, Defendant concealed from Plaintiffs and the Class the material fact that Tisch Asia was a five-year project subject to renewal only if certain contingencies were met, including NYU reaching

17

an agreement with the Singaporean Government pertaining to Singaporean tax on tuition, far from identical to Tisch New York.  Had the Named Plaintiffs known these facts, they would not have attended Tisch Asia.[75]  "A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 366 (2007).

    1.    <u>Whether NYU Had a "Special Relationship" with Tisch Asia Students Is an Unresolved Factual Issue</u>

As this Court has stated, "Determining whether a special relationship between the parties exists is a fact-based inquiry[.]" *Basso v. N.Y. Univ.*, 2017 U.S. Dist. LEXIS 34790, at *17. Factors to be considered in the analysis of a special relationship include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F. 3d 87, 103 (2d Cir. 2001) (citing *Kimmel v. Schaefer*, 89 N.Y. 2d 257, 652 (1996)).

In moving to Singapore based on NYU's representations regarding Tisch Asia, the Named Plaintiffs placed their confidence and trust in NYU, and a special relationship was formed between the parties.  Students relied on NYU's representations that Tisch Asia and Tisch NY were identical programs when making the decision to relocate to a foreign country with different currency, culture and laws.  They were uniquely dependent on NYU, entrusting it with

---

[75] Declarations of Plaintiff Anna Basso ¶ 4; Declaration of Amy Hartman ¶ 4; Declaration of Jaime Villa Ruiz ¶ 4.  The Declarations are attached to the Giskan Decl. as **Exhibit 12**.

the immigration process (including obtaining student visas) and the transition to living abroad, turning to NYU for information on housing, food, transportation, and emergency assistance, and spending vast amounts of money on relocation expenses, such as airfare and rent.[76]

NYU owed its students a duty to act in good faith and conduct fair dealing, including but not limited to providing qualified faculty, appropriate equipment, and professional development opportunities comparable to those in New York.  Under these unique circumstances, a "special relationship" existed between the students and NYU which created a duty in Defendant to speak truthfully to Plaintiffs.  *See Samuels v. Fradkoff*, 38 A.D.3d 208 (1st Dept. 2007) (finding a special relationship where plaintiff alleged that duty of care arose out of defendant's negligent performance of architectural services); *see also Murphy v Kuhn*, 90 N.Y.2d 266, 270 (1997) (noting situations between professionals and their clients in which "by virtue of their training and expertise," the professionals "may have special relationships of confidence and trust with their clients").  That degree of "confidence and trust" is certainly present here.

> 2.   Whether NYU, By Failing to Disclose to Tisch Asia Students That Tisch Asia Was Not Viable, Intended to Induce Reliance in Tisch Asia Students, Is an Unresolved Issue of Fact

Discovery revealed that NYU omitted many relevant and material facts in its presentation of Tisch Asia to both potential and current students.  It is now clear that Tisch Asia was a five-year experiment, doomed from its inception by poor planning and a lack of institutional support from NYU – and the same was clear to NYU administrators since at least 2010.  NYU faculty recognized this fact when they wrote in 2013 after the closure announcement: "We are troubled by the likelihood that NYU's students are charged full tuition for programs **hastily and**

---

[76] In arguing there was no special relationship, NYU points to other facts, demonstrating there are facts in dispute that must be resolved by a jury.  *See* Def. MOL at 10.

**inexpertly created** . . .   Such practices are unfair, and even dangerous, to our students, and therefore harmful to NYU's reputation."[77]

Even though NYU administrators knew that Tisch Asia was destined to fail, it continued to paint a rosy picture of the future of the program.  As Amy Hartman testified: "They talked about how they were doing this outreach in local universities, that they were going to prop it up, they were going to try to start some sort of undergrad program, they were reaching out to try to start acting programs, that, you know, that was all going to be implemented and that we had nothing to worry about."[78]  NYU concealed the facts that Tisch Asia faced severe financial problems from its inception, and that these financial problems threatened its very existence, and that Tisch Asia lacked support from NYU's administration.

NYU concealed the true state of Tisch Asia – that is, that the institution was not viable, and the educational experience it provided was not equal to that of Tisch New York – with an intent to induce reliance for enrollment purposes. Had NYU disclosed the truth, Plaintiffs would not have enrolled, and it is hard to imagine it would have had any takers at its lofty tuition price.

## C.   ISSUES OF FACT EXIST ON PLAINTIFFS' BREACH OF CONTRACT CLAIM

Defendant argues that Plaintiffs' breach of contract claim is based on "general claims about the quality of the education at Tisch Asia that are not actionable."[79]  This is inaccurate. Plaintiffs have shown that NYU repeatedly represented that its two programs – Tisch NY and Tisch Asia – were identical, and that it made "specifically designated and discrete promises" that it subsequently breached.  *Ward v. N.Y. Univ.*, 99 Civ. 8733 (RCC), 2000 U.S. Dist. LEXIS 14067, at *11 (S.D.N.Y. Sep. 25, 2000).

---

[77] *See* Letter to NYU Board of Trustees dated March 2013, attached to the Giskan Decl. as **Exhibit 13** (emphasis added).
[78] Hartman Dep. at 144.
[79] Def. MOL at 16.

A breach of contract claim under New York law "requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 381-82 (S.D.N.Y. 2005) (citations omitted). New York law recognizes that the relationship between a student and a university "is contractual in nature," *Andre v. Pace Univ.*, 170 Misc. 2d 893, 896 (App. Term 1996), and that "if the student complies with the terms prescribed by the university, he will obtain the degree he seeks." *Babiker v. Ross Univ. Sch. of Med.*, 98 Civ. 1429 (THK), 2000 U.S. Dist. LEXIS 6921, at *22 (S.D.N.Y. May 19, 2000) (citations omitted). A breach of contract claim is viable when a university fails to meet "its contractual obligation to provide certain *specified services*[.]" *Andre*, 170 Misc. 2d at 896. (emphasis in original); *see also Mostaghim v. Fashion Inst. of Tech.*, No. 01 Civ. 8090 (HB), 2002 U.S. Dist. LEXIS 10968, at *17 (S.D.N.Y. June 18, 2002) (finding that a college's Rights and Responsibilities Manual supported breach of contract claim).

Although "an inquiry into the quality of the course [i]s best left to the educational community," when a school promises "specified services" and fails to deliver those services, a breach of contract action is sustained. *Ansari v. N.Y. Univ.*, 96 Civ. 5280 (MBM), 1997 U.S. Dist. LEXIS 6863, at *10-11 (S.D.N.Y. May 12, 1997) (sustaining breach of contract action where defendants promised specified services, including "state-of-the-art facilities, faculty tutor-advisors, appropriate recognition upon completion of the program, overviews of the latest techniques, program activities from 9:00 A.M. to 4:00 P.M. every day, and membership in the AAO") (citation omitted).

In this case, unlike in *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10 CV 5628 (RJD) (JO), 2013 U.S. Dist. LEXIS 129748 (E.D.N.Y. Sep. 11, 2013), a case relied upon by Defendant,

the record is replete with examples of "promised specified services" – *i.e.*, specific promises that NYU breached to Tisch Asia students. *See Ansari*, 1997 U.S. Dist. LEXIS 6863, at *9.  Here, NYU's promises – that there were "no differences between the education received" at Tisch Asia and Tisch New York, that the curricula would be "identical," and that Tisch Asia would offer "state of the art production facilities" – do not require a fact finder to assess the quality of education Plaintiffs received.  Where NYU previously failed to honor its promise of providing "state-of-the-art-facilities," among other broken promises, a breach of contract cause of action was sustained. *Ansari*, 1997 U.S. Dist. LEXIS 6863, at *11. *See also Deen v. New Sch. Univ.,* 2007 U.S. Dist. LEXIS 25295, at *9 (S.D.N.Y. Mar. 27, 2007) (school's promises of such benefits as "courses taught by faculty members who are lifetime members or associates of the [acting school]," "workshops with distinguished actors," and providing certain type of instruction and training were an "appropriate basis for a breach of contract claim"); *Matter of Harris v. Dutchess County Bd. of Coop. Educ. Servs.,* 50 Misc. 3d 750, 760-761 (N.Y. Sup. Ct. 2015) (school's promises of "visits to local production facilities" and "administration of the National Competency Exam" were specific enough for breach of contract cause of action).

The representations that Tisch Asia was identical to Tisch New York were far from vague or general.  This case is not about the academic standards or the way the students were treated by faculty.  NYU made specific promises that are capable of proof, are not mere opinions, and will not require the Court to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution." *Paladino v. Adelphia Univ.,* 89 A.D.2d 85, 90 (2d Dept. 1982).  NYU made those promises in bad faith, knowing that it could not possibly fulfill them.  The breach of contract claim should be brought to a jury.

D.     **ISSUES OF FACT EXIST ON PLAINTIFFS' UNJUST ENRICHMENT CLAIM**

The elements of an unjust enrichment claim under New York law are: (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances are such that in equity and good conscience the defendant should return the money to the plaintiff. *Golden Pacific Bancorp v. Federal Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001).  It is an issue of fact whether Plaintiffs received the benefit of the bargain, which would include all benefits NYU promised to Tisch Asia students.

NYU argues that because "the alleged factual bases and relief sought for unjust enrichment are identical to their other claims," it "should be dismissed as duplicative."[80]  This Court certified the Class's unjust enrichment claim <u>and</u> sustained the Named Plaintiffs' breach of contract claim.  *See Basso*, 363 F. Supp 3d at 424.  The elements of the claims are different.  To the extent that the two claims overlap, Plaintiffs acknowledge they cannot collect on both, *see MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 157 F.3d 956, 964 (2d Cir. 1998), but there is nothing impermissible in itself about the mere coexistence of the two claims before trial.

E.     **DAMAGES MUST BE PRESENTED TO A JURY**

NYU argues that the Named Plaintiffs have not established the damages elements of their claims because the Plaintiffs' theory of damages rests on speculation.[81] The Amended Complaint expressly alleges that Plaintiffs paid their tuition in full but that NYU "failed to provide Plaintiffs and other similarly situated class members the same education and the same professional training as the education and training awarded to Tisch New York student."[82]

---

[80] Def. MOL at 25.
[81] *Id*. at 6-7.
[82] FAC ¶¶ 69-71.

23

NYU already argued, and lost, this point on its Motion to Dismiss and the Court ruled that, "these are issues of fact that are not suitable to be resolved at the motion to dismiss stage."[83] On class certification, the Court indicated that, "while individualized questions do exist," presumably including the determination of each class members' damages, "justice and judicial economy would be better served by answering the common questions in a single proceeding, to be followed by separate proceedings on the individualized questions -- a familiar course in Rule 23(b) (3) class actions. *Basso,* 363 F. Supp. 3d at 425. Because the issue of damages remains a factual issue that is in dispute, it should be left to a jury to decide.

Plaintiffs' damages are far from speculative and are rooted in the very real experiences of the Named Plaintiffs. At the very least, each of them paid tuition believing that they were enrolling in the Asian equivalent of Tisch New York only to learn through the course of their matriculation that it fell far short of that. Plaintiffs were negatively impacted by the symptoms of an inexpertly, hastily created program that had no support from the NYU administration. Testimony and documents revealed stark differences between Tisch Asia and Tisch New York in nearly every aspect of the programs, from the quality of the faculty[84] and access to career development opportunities,[85] to the condition of the facilities[86] and the availability of scholarships.[87]

---

[83] *See* Dkt. No. 25 at 2; *Basso,* 2017 U.S. Dist. LEXIS 34790 at *11.

[84] *See* Basso Dep. 140-141; Email from Mary Schmidt Campbell dated October 16, 2012, attached to the Giskan Decl. as **Exhibit 14**; Emails from Mary Schmidt Campbell dated May 29 and 30, 2012, attached to the Giskan Decl. as **Exhibit 15**; Letter by the NYU Tisch Asia Student Body dated November 26, 2012, attached to the Giskan Decl. as **Exhibit 16** (regarding the qualifications of the faculty at Tisch Asia). *See also* Basso Dep. at 78-82, 105-106, 113-116, 136, 221; Villa Ruiz Dep. at 81-82, 113-118, 187-188, 198-199, 207-208; Bousley Dep. at 92-93, 155, 169-170, 187 (regarding quality of courses at Tisch Asia).

[85] *See* Basso Dep. at 85; Bousley Dep. at 199-201; Hartman Dep. at 70-73, 75, 102-104, 109 254-255, 265; Villa Ruiz Dep. at 122, 134-135; Shirazi Dep. at 193, 244-45.

[86] *See* Basso Dep. at 261-263; Bousley Dep. at 64-66, 70, 100-101, 209; Hartman Dep. at 82-84, 137, 158-159.

[87] *See* Hammond Dep. at 18; Bousley Dep. at 101.

Because of these differences, Plaintiffs did not receive what their tuition dollars paid for. *Geffner v. Iona Coll.*, 2013 U.S. Dist. LEXIS 144850, at *9 (S.D.N.Y. Oct. 2, 2013) ("In a breach of contract action with a university, claims for appropriate consequential damages, including loss of future income and tuition, may be appropriate.").  Expert discovery is not necessary, as the testimony of the Named Plaintiffs suffices to show that the costs they paid for the Tisch Asia program was grossly inflated compared to the value received and what was promised.  By way of example, Plaintiff Hartman compared the value of Tisch Asia as equal to her undergraduate program at Montana State.[88]  Plaintiffs are burdened with student loan debt[89] and they are entitled to recoup the tuition they paid.  A jury can and should decide whether "Tisch Asia dissolved because it was improperly managed and based on misrepresentations" made by NYU, *see Basso*, 363 F. Supp 3d at 423, and accordingly how much in damages each Plaintiff is entitled to. *Perez-Webber v InterCoast Career Inst.,* 2:16-CV-00196-JAW, 2018 WL 2347061, at *11 (D. Maine 2018) (a jury could well decide that defendant "failed to live up to its most fundamental contractual obligations and that the Plaintiffs are entitled to damages," including return of tuition).

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment.

 Dated: June 26, 2020                                 Respectfully submitted,


                                                      /s/ Oren Giskan
                                                      Oren Giskan

---

[88] Hartman Dep. at 315.
[89] Basso Dep. at 263-265, 267 ($170,000 in debt); Hartman Dep. at 191, 310; Villa Ruiz Dep. at 248, 249 (between $40,000-50,000 in debt).

**GISKAN SOLOTAROFF & ANDERSON LLP**
217 Centre Street - 6th Floor
New York, NY 100013
Telephone: (212) 847-8315

**SCHWARTZ, PONTERIO & LEVENSON, PLLC**
134 West 29th Street – Suite 1006
New York, New York 10001
Telephone: (212) 714-1200

*Attorneys for Plaintiffs and the Certified Class*

26