UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA BASSO, AMY HARTMAN, and JAIME VILLA RUIZ,<br><br>Plaintiffs,<br><br>- against -<br><br>NEW YORK UNIVERSITY,<br><br>Defendant. | Civil Action No. 16 Civ. 7295 (VM)(KNF)<br><br>ECF CASE<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
NEW YORK UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

VENABLE LLP
Michael J. Volpe
Benjamin E. Stockman
Sandy Schlesinger
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
t: (212) 307-5500
f: (212) 307-5598

*Attorneys for Defendant
New York University*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. OBJECTIONS TO PLAINTIFFS' COUNTERSTATEMENT OF FACTS ...................... 2

III. THE APPLICABLE STATUTES OF LIMITATIONS BAR THIS
ACTION ............................................................................................................................ 3

    A.    NYU Has Not Waived Its SOL Defense and Plaintiffs Have Had a
Full and Fair Opportunity to Contest the Issue. ....................................................... 3

    B.    Applying Any SOL, the Majority of Students are Time-Barred
and/or the Class Should be Decertified Because Residence
Controls the Applicable SOL .................................................................................. 4

IV. PLAINTIFFS' DAMAGES THEORY IS IMPERMISSIBLE ........................................... 5

V. EDUCATIONAL INSTITUTIONS ARE NOT REQUIRED TO
DISCLOSE THEIR FINANCES TO PROSPECTIVE STUDENTS ................................. 6

VI. THE "IDENTICAL PROGRAM" CASE THEORY MUST FAIL .................................... 9

VII CONCLUSION ................................................................................................................ 10

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3Com Corp. v. Banco do Brasil, S.A.*,
   171 F.3d 739, 743 (2d Cir. 1999)......................................................................................5

*André v. Pace Univ.*,
   655 N.Y.S.2d 777 (2d Dept. 1996) ..................................................................................10

*Astor Holdings Inc. v. Roski*,
   325 F. Supp. 2d 251 (S.D.N.Y. 2003)................................................................................4

*Babiker v. Ross Univ. Sch. of Med.*,
   No. 98 Civ. 1429 (THK), 2000 WL 666342 (S.D.N.Y. May 19, 2000)..................................10

*Basso et al. v. New York Univ.*,
   No. 16 Civ. 7295 (VM), 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017) ...................................5

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985)..............................................................................................2

*Deen v. New Sch. Univ.*,
   No. 05 Civ. 7174 (KMW), 2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ............................10

*Matter of Harris v. Dutchess Cty. Bd. of Coop. Educ. Servs.*,
   25 N.Y.S.3d 527 (Sup. Ct. 2015)..................................................................................8, 10

*Koulajian v. Trek Bicycle Corp.*,
   No. 90 Civ. 3156 (LJF), 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992) .......................................5

*Livent, Inc. Noteholders Sec. Litig.*,
   355 F. Supp. 2d 722 (S.D.N.Y. 2005)................................................................................3

*Maas v. Cornell Univ.*,
   94 N.Y.2d 87 (1999) .............................................................................................6, 7, 8, 9

*Mihalakis v. Cabrini Med. Ctr.*,
   542 N.Y.S.2d 988 (App. Div. 1989) ..................................................................................6

*Mostaghim v. Fashion Inst. of Tech.*,
   No. 01 Civ. 8090 (HB), 2002 WL 1339098 (S.D.N.Y. June 19, 2002)..................................10

*Papaspiridakos v. Educ. Affiliates, Inc.*,
   No. 10 Civ. 5628 (RJD)(JO), 2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013)...................6, 8, 9

*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir. 1992) ......................................................................................6

*SEC v. Boock*,
    750 F. App'x 61 (2d Cir. 2019) ..................................................................................4

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ................................................................................1, 7, 8

*Sussle v. Sirina Prot. Sys. Corp.*,
    269 F. Supp. 2d 285 (S.D.N.Y. 2003) ........................................................................2

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015) ......................................................................................5

*Winmar Co. v. Teachers Ins. & Annuity Ass'n of Am.*,
    870 F. Supp. 524 (S.D.N.Y. 1994) ............................................................................4

*Wu v. Pearson Educ. Inc.*,
    No. 09 Civ.6557 (KBF), 2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ..................4

**Statutes/Rules**

20 U.S.C. § 1099c ...............................................................................................................7

26 U.S.C. § 6033 .................................................................................................................7

26 U.S.C. § 6104(b) ............................................................................................................7

26 C.F.R. § 301.6104(d)-1 ..................................................................................................7

Fed. R. Civ. P. 23 ............................................................................................................4, 5

N.Y. C.P.L.R. § 202 ............................................................................................................5

### I. PRELIMINARY STATEMENT

Defendant New York University ("NYU") submits this reply memorandum of law in support of its Motion for Summary Judgment. NYU has repeatedly and consistently raised a statute of limitations ("SOL") defense throughout the course of litigation, including to this Court expressly in anticipation of its motion. Under New York's borrowing statute, Plaintiffs' claims are time-barred. To the extent any claims remain timely, the class must be decertified because New York's borrowing statute requires an inquiry into each class member's place of residence to determine the SOL. Moreover, Plaintiffs' impermissible damages theory requires an individualized inquiry into each class member's opinion of the relative value of his or her education.

Plaintiffs' breach of contract claim – brought individually – must fail because it is based on the false premise that NYU promised that Tisch Asia would be identical to Tisch New York in every respect – a promise that, the record indisputably shows, was never in fact made. Tisch Asia did, however, deliver on the specified services promised to students and provided them a first-rate graduate film education and degree in exchange for their tuition payment. This should be the end of the Court's inquiry because New York law does not allow courts to second-guess a university's administrative decision-making or pedagogical choices. Finally, Plaintiffs now make clear that their fraud, negligent misrepresentation, and unjust enrichment claims are, in addition to being unsupported by the record, based on a theory lacking legal precedent. As detailed under analogous facts and law in *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 67-68 (1st Cir. 2020), universities do not owe a duty to disclose financial issues to students. Plaintiffs' claims should therefore be dismissed.

## II. OBJECTIONS TO PLAINTIFFS' COUNTERSTATEMENT OF FACTS[1]

Plaintiffs' Corrected Responses to NYU's Statement of Undisputed Facts ("Pls. Resp.") and Rule 56.1 Statement ("Pls. 56.1") (Dkt. No. 138) fail to present any genuine dispute as to any material fact because they either (i) admit the facts presented by NYU, or (ii) attempt to deny or supplement the facts presented by NYU in impermissible ways, including:

- Arguing legal issues, violating Rule II.E.3 of the Court's Individual Rules. *See, e.g.*, Pls. Resp. Nos. 8, 11, 13, 23, 26-27, 30-33, 35, 38, 42, 56, 62, 73, 77-79, 86, 94-95, 114-15, 117-18, 120-21, 126-27, 146-47, 152-154, 157-59, 165-69, 180-81, 183-85, 188, 196, 199-201, 205-08, 210; Pls. 56.1, ¶¶ 28 n. 32, 32, 34 n. 37, 54, 67.
- Attempting to create disputes of fact amongst putative plaintiffs by questioning the validity of declarations submitted by student putative plaintiffs. *See* Pls. Resp. Nos. 27, 30, 33, 73, 77-79, 86, 94-95, 114-15, 117-18, 120-21, 146-47, 157-59, 165-69, 180-81, 183, 185, 199-201, 205, 206-08, 210.
- Asserting self-serving conclusory statements unsupported by the evidence. *See Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 302 (S.D.N.Y. 2003); *see, e.g.*, Pls. Resp. Nos. 5, 39, 41, 43, 45-46, 63, 70, 80, 91-92, 126, 145, 152-55, 173, 176-77, 179, 184, 196; Pls. 56.1, ¶¶ 8-9, 16-20, 22, 24-27, 32, 40-42, 44-52, 56-58, 62, 67, 69, 71-74, 80-81 (p. 111)[2], 83 (p. 112), 81 (p. 113), 83 (p. 113), 93-98, 112, 105-06, 117-119.
- Offering inadmissible hearsay statements. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985); *see, e.g.*, Pls. Resp. Nos. 13, 38, 83, 92, 218; Pls. 56.1, ¶¶ 17, 19, 22, 25, 42, 58, 80 (p. 111), 80 (112-13), 102.
- Relying upon Plaintiffs' declarations which in part contradict their own sworn deposition testimony. *See, e.g.*, Pls. 56.1, ¶¶ 95-96, 119.
- Relying on the time-barred allegations of Stephanie Bousley. *See, e.g.*, Pls. Resp. Nos. 8, 13, 30, 91-92, 126, 173, 176-77, 179, 180, 184; Pls. 56.1, ¶¶ 7, 21, 40-41, 44, 46, 52, 54, 57, 69-71, 73, 76 (p. 111), 78 (p. 111), 83 (p. 112), 79 (p. 112), 83 (p. 113) n. 62.
- Mischaracterizing evidence. *See, e.g.*, Pls. Resp. Nos. 42, 70, 80, 166; Pls. 56.1, ¶¶ 28, 34, 44-52, 57-58, 62, 65, 68, 99, 103, 109, 112.
- Citing to portions of the record not included within the relevant exhibits to the Giskan Declaration (Dkt. No. 135) or failing to cite to the record. *See, e.g.*, Pls. Resp. Nos. 15, 16, 23-24, 33-34, 123, 178; Pls. 56.1, ¶¶ 24, 49, 79 (p. 112), 81 (p. 113), 84.

Moreover, some assertions made by Plaintiffs actually prove the non-viability of their claims. *See, e.g.*, Pls. Resp. No. 136 (conceding that "working professionally" is not defined). The absence of any genuine issue of material fact clears the path for dismissal of this case.

---

[1] Consistent with the Court's Individual Rule II.E.3, NYU is not submitting a lengthy line by line comparison of the objectionable counterstatements in Plaintiffs' Responses.

[2] Pls. 56.1 repeats paragraph numbers 75 through 83. *See* Pls. 56.1, pp. 103, 110-13. Therefore, Defendant references both the paragraph and page number in its citations to those paragraphs.

## III. THE APPLICABLE STATUTES OF LIMITATIONS BAR THIS ACTION

### A. NYU Has Not Waived Its SOL Defense and Plaintiffs Have Had a Full and Fair Opportunity to Contest the Issue.

As Plaintiffs concede, NYU first raised a SOL defense in each of its letters supporting its request for leave to move to dismiss the original Complaint and the Amended Complaint in this matter. (Dkt. Nos. 18, 25, 26). NYU was not afforded the opportunity to fully brief all of the SOL issues at the motion to dismiss stage, as the Court based its decision on the parties' letters without formal briefing. (Dkt. Nos. 23-27). In any event, at the pleading stage, the applicable legal standard required that the Court accept as true all of the allegations in the Amended Complaint even though the pleading omitted facts relevant to the SOL analysis, such as the dates Plaintiffs commenced study at Tisch Asia and the dates and locations of their alleged reliance on the misrepresentations underlying the claims. These facts were developed through discovery.

NYU next raised the SOL defense in its brief opposing Plaintiffs' Motion for Class Certification, arguing that a large portion of the proposed class was barred by the SOL. (Dkt. No. 97 at 12-13). The Court did not analyze the SOL at that time, noting "[t]he Court declines NYU's invitation to find the Proposed Class insufficiently numerous on the basis of determinations that overlap with the merits questions . . . ." (Dkt. No. 106 at 13). Summary judgment is therefore the first opportunity for NYU to fully brief this merits issue on the factual record. Indeed, the Court recognized the importance of full briefing on this issue and held class notice until this issue has been decided. (Dkt. No. 120) (stating that SOL issues would be addressed on summary judgment).

"It is well established in this Circuit that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice as a result of its late pleading." *In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722, 727 (S.D.N.Y. 2005).

Plaintiffs have suffered no prejudice because they had a full opportunity to respond to NYU's argument in their opposition to summary judgment ("Opposition").  *See, e.g.*, *Astor Holdings Inc. v. Roski*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003).  Plaintiffs do not identify any prejudice resulting from NYU's inadvertent omission of the defense from its Answer to the Amended Complaint.  Moreover, NYU's efforts to raise the SOL defense in each of the prior two motion cycles and the Court's express reservation of this issue for summary judgment distinguish the circumstances here from the cases cited by Plaintiffs in support of their waiver argument.  *See Winmar Co. v. Teachers Ins. & Annuity Ass'n of Am.*, 870 F. Supp. 524, 533 (S.D.N.Y. 1994) (finding prejudice because plaintiffs were deprived the ability to address the SOL); *SEC v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (unpublished summary order applying abuse of discretion standard to default judgment decision).

**B. Applying Any SOL, the Majority of Students are Time-Barred and/or the Class Should be Decertified Because Residence Controls the Applicable SOL.**

As discussed in detail in Point III(C) of NYU's Memorandum of Law in Support of Summary Judgment ("MOL") (Dkt. No. 123), even if all students are entitled to a six-year SOL, the claims of students who enrolled in class years 2007-2008, 2008-2009, 2009-2010, and 2010-2011 – which includes Plaintiff Hartman – are all time-barred, as are all claims for unjust enrichment.  Decertification is warranted for this reason alone, and because the applicable SOL varies depending on each student's residence.[3]  Fed. R. Civ. P. 23 vests the Court with broad discretion to alter its class certification decision at any time before final judgment.  *Wu v. Pearson Educ. Inc.*, No. 09 Civ.6557 (KBF), 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012) (class certification is tentative before class notice is sent).  As discussed in Point III(C) of NYU's MOL,

---

[3] At a minimum, the Court should revise the class definition to eliminate the time-barred students.

4

the Court must apply New York's borrowing statute to determine the applicable SOL.[4]  *See* N.Y. C.P.L.R. § 202.  Plaintiffs do not argue that N.Y. C.P.L.R. § 202 is inapplicable; rather, they argue that Singapore law should govern the SOL.  This argument fails because Plaintiffs Basso, Hartman, and Villa were residents of Georgia, Colorado, and California, respectively, and sustained their alleged injury there (student loan debt and/or tuition paid).  *See* Volpe Decl., Exhibit A, ¶¶ 13-15.  When an alleged injury is economic, a cause of action accrues "where the plaintiff resides and sustains the economic impact of the loss," not where the alleged wrongful acts occurred.  *Thea v. Kleinhandler*, 807 F.3d 492, 498 (2d Cir. 2015).

Plaintiffs assert that Singapore law controls but cite no authority for its applicability under N.Y. C.P.L.R. § 202 for claims that accrued *before they arrived in Singapore* and for economic impact that they felt in the United States.  Moreover, Plaintiffs' presence in Singapore was temporary.  Plaintiffs Hartman and Basso only spent four semesters in Singapore; both returned to the United States in the summer between their first and second years and after completing their second year.  Plaintiff Villa also returned to the United States after graduation.  Even if Plaintiffs established residency in Singapore, their permanent U.S. residences should control.  *Koulajian v. Trek Bicycle Corp.*, No. 90 Civ. 3156 (LJF), 1992 WL 28884, at *3 (S.D.N.Y. Feb. 11, 1992).

## IV. PLAINTIFFS' DAMAGES THEORY IS IMPERMISSIBLE

Plaintiffs argue that the Court's February 24, 2017 Order definitively settled the issue of damages, but this is not a fair reading of the Court's Order.  (Dkt. No. 27).  The Court merely reserved the issue of damages for revisiting with the benefit of a full evidentiary record.  *Basso et al. v. New York Univ.*, No. 16 Civ. 7295 (VM), 2017 WL 1019505, at *4 (S.D.N.Y. Feb. 24, 2017)

---

[4] Contrary to Plaintiffs' assertion, NYU has not consented to the New York SOL.  The case cited by Plaintiffs for this assertion merely holds that where both parties ignore choice of law issues, the Court may deem that they consented to a decision under the law briefed.  *See 3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir. 1999).

("To the extent that NYU contends Plaintiffs' damages are speculative, these are issues of fact that are not suitable to be resolved at the motion to dismiss stage."). Despite the benefit of over a year of discovery, Plaintiffs seek to base damages solely on Plaintiff Hartman's individualized opinion that the value of Tisch Asia was equal to her undergraduate program at Montana State University. (Opposition at 25). As discussed in Point III(D) of NYU's MOL, a damages theory based on the premise an education was not worth the cost is not viable.[5] *Mihalakis v. Cabrini Med. Ctr.*, 542 N.Y.S.2d 988, 989-90 (App. Div. 1989). Plaintiffs further argue that they are entitled to tuition reimbursement for differences between Tisch Asia and Tisch New York regarding the "quality of the faculty", "access to career development opportunities", "the conditions of the facilities", and the "availability of scholarships," but do not explain how a jury would measure such damages other than by conclusory guesswork. (Opposition at 24). All of these bases amount to educational malpractice and/or are contradicted by the undisputed record. *See* NYU MOL, Point III(G)(3); *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10 Civ. 5628 (RJD)(JO), 2013 WL 4899136, at *3, *5 (E.D.N.Y. Sept. 11, 2013); *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992).

## V.  EDUCATIONAL INSTITUTIONS ARE NOT REQUIRED TO DISCLOSE THEIR FINANCES TO PROSPECTIVE STUDENTS

In recognition of the weakness of their contract-based theories, Plaintiffs have shifted their negligent misrepresentation, fraud, and unjust enrichment claims toward an emphasis on Tisch Asia's finances, under the theory that the Named Plaintiffs would not have enrolled at Tisch Asia had they known its financial condition. Yet they cite no cases for their premise that NYU owed a duty to prospective students to disclose Tisch Asia's financial challenges. Indeed, New York courts have rejected such a rule because institutions of higher education are better positioned than the courts to make decisions regarding internal administrative matters. *Maas v. Cornell Univ.*, 94

---

[5] Moreover, the individualized nature of Plaintiff Hartman's opinion calls class certification into question.

6

N.Y.2d 87, 92, (1999). Moreover, legislatures vested the executive branches of federal and state government with the responsibility of regulating university finances.[6]

The undisputed facts of this case do not justify the Plaintiffs' request for an unprecedented departure from this law. Plaintiffs point to NYU administrators' internal correspondence regarding concerns over the stability of Tisch Asia as supporting their argument that NYU knew the program was "doomed to fail" and nevertheless continued to recruit students. Opposition at 11-13. Plaintiffs further allege that Tisch Asia was a "five-year project" that lacked the support of NYU administrators. *Id.* These arguments wholly ignore the undisputed fact that NYU expected the campus to endure and students received the benefit of their bargain—a fully funded Tisch Graduate Film program in exchange for their tuition payment. NYU's 56.1 Statement ¶¶ 33-65. (Dkt. No. 125). Rather than conceal the financial issues, NYU confronted them directly in an effort to solve them. The record is undisputed that NYU's administration believed Tisch Asia would be sustained through a joint program with the National University of Singapore, and "[e]arly disclosure of financial distress might well have endangered the ability of the institution to recover and made the financial distress even worse." *Squeri*, 954 F.3d at 67.

*Squeri*, which involved the abrupt closure of Mount Ida College with no warning to students, is instructive as it contains many of the same types of allegations asserted here. Students filed a federal class action lawsuit alleging claims under Massachusetts law that are also alleged here under New York law. In affirming dismissal of the suit, the First Circuit rejected the students' contention that Mount Ida owed a duty under Massachusetts law to disclose its financial distress

---

[6] For example, federal law requires universities to report financial information to the Department of Education for a financial responsibility score, Higher Education Act of 1965, Sec. 498(c), 20 U.S.C. § 1099c, and by virtue of their nonprofit status, to file annual returns subject to public inspection, *see* 26 U.S.C. § 6033, 6104(b); 26 C.F.R. § 301.6104(d)-1. The New York State Education Department requires all degree-granting institutions to submit annual independently audited financial statements, which NYU publishes on its website as well: https://www.nyu.edu/employees/resources-and-services/financelink/accounting-and-reporting/financial-statements.html.

7

to students even as it continued to recruit them.  *Id.*   Like Massachusetts, New York law also holds that no general fiduciary duty exists between universities and students.  *Papaspiridakos*, 2013 WL 4899136, at *3.  As the First Circuit noted, premature disclosure of financial distress can be self-defeating as it discourages students from enrolling.  *Squeri*, 954 F.3d at 67.  Here, Plaintiffs' claims for fraud and negligent misrepresentation by omission require Plaintiffs to establish a duty to disclose, but no such duty exists between universities and students.  *Papaspiridakos*, 2013 WL 4899136.  In contrast to Mount Ida College, Tisch Asia was more transparent with students: Dean Campbell, Joseph Juliano, and Nancy Morrison separately met with the students to discuss the campus's challenges and to answer student questions.  NYU's 56.1 Statement ¶¶ 51, 54.  NYU offered first year students a full tuition refund after announcing the closure in 2012. *Id.*, ¶ 81.

New York law further precludes Plaintiffs from re-litigating the internal deliberations NYU engaged in to fortify Tisch Asia.  Courts in New York do not sit as super-administrators for institutions of higher education.  *Maas*, 94 N.Y.2d at 92 ("[A]dministrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are . . . better suited to make relatively final decisions concerning wholly internal matters.").  NYU administrators identified financial issues at Tisch Asia and engaged in efforts to try to solve them.  The evidence of NYU administrators working through these issues, including some evidence that they were critical of Tisch Asia's management, is precisely the type of internal administrative deliberation that courts leave undisturbed.  The fact that administrators disagreed about whether an undergraduate program was necessary to sustain Tisch Asia is not evidence of fraud or negligent concealment, and is not an issue the jury has the expertise to resolve.  NYU's 56.1 Statement ¶ 56; *Maas*, 94 N.Y.2d at 92; *Matter of Harris v. Dutchess Cty. Bd. of Coop. Educ. Servs.*, 25 N.Y.S.3d 527, 537 (Sup. Ct. 2015) ("Educators and other school officials must be

allowed to act within a broad framework without interference by the courts . . ."). To allow such issues to go to a jury would have a chilling effect on higher education by discouraging schools from creative endeavors such as Tisch Asia. It would also amount to judicial overreach since executive branches are responsible for regulating universities and public policy allows universities to self-govern administration. *Papaspiridakos*, 2013 WL 4899136, at *3; *Maas*, 94 N.Y.2d at 92.

## VI. THE "IDENTICAL PROGRAM" CASE THEORY MUST FAIL

Throughout this case, Plaintiffs have pushed the false premise that NYU promised prospective students that Tisch Asia would be "identical" to Tisch New York in all respects. NYU made no such promise. Plaintiffs unreasonably twist the FAQ response on the Tisch Asia website that "[t]here are no differences between the education received in Singapore and the education received in New York" into an alleged promise that every aspect of the two programs was identical. In fact, the sentence including "no differences between the education" is qualified by subsequent descriptions of aspects of the program that do not use the word "identical" (which only appears before "curriculum" and not before any of the other descriptors). Further, the response states that "Programs developed specifically for Singapore are accredited by New York University[,]" which makes it clear that aspects of the program were designed *specifically for Singapore*, and therefore differently from New York. See Volpe Decl., Ex. Q, ¶26. This full text is clear that NYU's FAQ response about the equivalency of the "education" at the two campuses is not a "certain specified service" that is actionable under the law. *Papaspiridakos*, 2013 WL 4899136, at *4.[7] The cases cited by Plaintiffs in support of their "identical program" theory are not factually analogous. *See*

---

[7] Based on their "identical program" theory, Plaintiffs ask the Court to allow a jury to weigh Oliver Stone's approach to the Artistic Director position against Spike Lee's approach to the position at Tisch New York. It's a false and impermissible comparison as Spike Lee is a tenured professor at Tisch New York, whereas Oliver Stone was not a professor of any kind at Tisch Asia (nor was he advertised as a professor). *Papaspiridakos*, 2013 WL 4899136. Moreover, Plaintiffs concede that Oliver Stone came to campus as Artistic Director. NYU's 56.1 Statement ¶¶ 176-77.

*André v. Pace Univ.*, 655 N.Y.S.2d 777, 780 (2d Dept. 1996) (reversing judgment for plaintiffs based on claim that university's description of course was false, deceptive, and misleading); *Babiker v. Ross Univ. Sch. of Med.*, No. 98 Civ. 1429 (THK), 2000 WL 666342 (S.D.N.Y. May 19, 2000) (granting summary judgment in favor of defendant school); *Mostaghim v. Fashion Inst. of Tech.*, No. 01 Civ. 8090 (HB), 2002 WL 1339098 (S.D.N.Y. June 19, 2002) (granting summary judgment in favor of defendant school); *Deen v. New Sch. Univ.*, No. 05 Civ. 7174 (KMW), 2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) (dismissing claims of unjust enrichment, false advertising, and certain breach of contract theories based on disclaimer in marketing bulletins); *Matter of Harris*, 25 N.Y.S.3d at 537 (dismissing negligent misrepresentation claim based on public policy prohibiting court intervention in education administration).  In *Deen*, the sole breach of contract theory that survived a motion on the pleadings arose from the school's advertisement that each diploma would bear the "Actor's Studio Drama School" name on it, which is clearly distinct from the general representation NYU made about the equivalency of the "education" at the two campuses.  Here, unlike in *Deen*, all graduates received an identical degree to Tisch New York students as promised.

### VII. CONCLUSION

For the foregoing reasons, NYU respectfully requests that the Court grant its motion for summary judgment in its entirety and grant such further relief that this Court deems just and proper.

Dated: July 24, 2020  
    New York, New York

VENABLE LLP  
1270 Avenue of the Americas, 24th Floor  
New York, New York 10020

By: /s/ Michael J. Volpe  
Michael J. Volpe  
Benjamin E. Stockman  
Sandy Schlesinger  
*Attorneys for Defendant New York University*